JOHN R. KILBEE AND WILLIAM D. BARNES, APPELLANTS, VS. MARIE E. MYRICK, APPELLEE.

1. The husband having executed a deed conveying the whole of his estate, the conveyance will not be set aside, upon a bill by the wife charging that the husband was of unsound mind, and incapacitated to contract at the date of its execution.

2. Where such a bill is brought by the wife against the grantee of the husband, there being no equity in the bill, or *prima facie* case made against the defendant, an interlocutory order, directing such grantee to pay an allowance to the wife *pendente lite*, is improper.

Appeal from the Circuit Court of Jackson county.
The opinion of the court states the case.

*J. F. McClellan* and *Papy & Peeler*, for Appellants.

We insist, under the first error assigned, that John D. Myrick should have been made, and is, a necessary party to this bill. He is interested in the estate to be affected by the decrees, and under the deeds there is a resulting trust to him, if anything is left after the object of the trust has been accomplished; and this rule will apply with equal force to the creditors enumerated

in the exhibits. Story's Equity Pleading, 72, 78, 135, 139, 81, 70; 1 Danl. Ch. Ple. and Pr., 202; 4 Wash., C. C. Rep., 202; 1 Hill, N. Y., 97. W. D. Barnes, the agent of John R. Kilbee, should not have been made a party. Story's Eq. Ple., §231.

The complainant cannot sue alone, for the bill discloses the fact she is a married woman, and should sue by next friend. Complainant falls within none of the exceptions to this rule. Story's Equity Pl., 61; 1 Daniel's Ch. Prac., 84, 105, 106.

The second error assigned embraces a very wide field of discussion. We claim the complainant fails to disclose, by her bill, the fact that she has any interest in the property she seeks to charge. It is clear the courts of this State have no jurisdiction over the person of John R. Kilbee, or the property in Virginia embraced in one of the exhibits to the bill. 4 Md. Ch. Rep., 60. The deed of an idiot or lunatic is not absolutely void, but voidable; but we insist the complainant in this cause cannot avoid the deeds of 27th of October, 1866, because there is no privity of estate or of blood between her and John D. Myrick. This question will be fully discussed by my associate counsel.

It does not appear from this bill that John D. Myrick, who made the deed, was a lunatic at the time or before, or that the inquisition alleged to have been taken, covered and embraced the date of the making of the deeds. If it had, the deeds are not of necessity void, if fair, and with notice; especially where the parties cannot be reinstated. Neil vs. Morely, 9 Vesey, 478 and note. Notice is not alleged, and indeed the complainant admits that she sought to impress upon the friends of John D. Myrick the fact that he was quite sane. John R. Kilbee was his friend. The parties cannot be placed *in statu quo*. The estates in Virginia have been sold and the money applied.

It is not charged in the bill that there was any fraud used by John R. Kilbee to procure the executions of the deeds, or that the objects of the deeds were not necessary and beneficial to Myrick. It is not charged that they were beneficial to John

R. Kilbee, or that the debts they were made to pay off did not exist. Courts of equity interfere upon the ground of fraud. There was nothing, and there is no charge in the bill, that Kilbee acted in the matter *mala fides.* 9 Vesey, §482; 7 Story's Equ., 226, 227; 2 Paige's Ch. Rep'ts, 153; 5 ibid., 242.

As to the three errors assigned, the courts should not have made the order in the first place, and therefore should have set it aside. Before the court acted, the question should have been tried as to whether Myrick was a lunatic when the deeds were made. 9 Vesey, 605. No order should have been made affecting the estate in the hands of the trustee, Kilbee, until there was an answer put in by the defendants, and because Myrick was insolvent. 5 Wheaton, 424; 17 Howard's S. C. Rep., 130; 4 Md. C. Rep'ts, 126.

The exceptions to the Master's Report were properly taken. There was no evidence before the master to sustain his report.

The evidence before the master showed that John D. Myrick was insolvent, and that the property in the hands of Kilbee would not pay his debts. See Barnes and Odum's affidavits. The evidence showed the complainant was not without means. See Barnes and Odum's affidavits. There was no other evidence before the master, none is filed, and none is taken. None, whatever, is referred to.

As to the last error assigned, the bill does not show the complainant had any interest in the property embraced in the deeds, either in law or equity; therefore she could not apply to have them set aside or annulled. And besides, the parties are not before the courts who could ask them annulled or set aside, and therefore no order should have been made in complainant's behalf. Fonblanque's Equ., 50 and 57; 4 Danna, 349; 1 J. J. Marshal, 245, 248, 2 Blk's Comm., 290; 8 Paige's Ch. Rep., 609; ibid., 325; ibid., 445.

By these authorities only privies in blood and representatives can avoid the deed of a lunatic. The same is true of infants.

2 Kent's Com., 261 and 262; 6 Johnson's Rep., 257.   Privies in estate cannot.   2 Dev. & Batt, 323.

*Hawkins & Bush* and *C. C. Yonge*, for Appellee.

*Geo. S. Hawkins*, in behalf of Appellee.

Mrs. Marie Myrick, in this case, makes an application for an allowance, by way of maintenance, out of the estate of said John D. Myrick, a lunatic, said estate being in the hands of W. D. Barnes, his guardian or committee.   A decree was made by the court allowing the sum of sixty dollars per month for the yearly support of Mrs. Myrick, and the sum of five hundred dollars for court expenses in obtaining the decree.

The whole or entire decree is resisted, and appeal taken.   We contend that the decree was proper in all its provisions.

In several, if not most of the States of the Union, there are provisions by statute for the care and custody of lunatics, and their maintenance.   That of Florida is to be found on page 26 of the laws of 1856.   It confers upon the court the power to bind the estate by its decrees.   This grant of power was superfluous, the court of chancery possessing it by virtue of its inherent jurisdiction, and indeed having the most plenary authority over the person as well as the estate of the lunatic.   2 Story's Eq. Ju., §1335, 1337, 1362, 1365; 2 Maddox Ch. P., 723 et seq.; *In re* Wendell, 1 John. Ch. R., 600; Latham vs. Wendell, 2 Iredell Ch. R., 298.   It is very trite to remark, that every man, if he has the ability, is obliged to support his wife and children. Of course this moral duty, or at least its practical exercise, is, as to a lunatic, incapable of being performed; but a court of equity acts for him, and performs those duties which the husband was bound to execute had he been sane.

The court looks solely to the advantage and benefit of the lunatic, disregardful of the rights of those in succession, and even creditors.   *In re* Salisbury, 3 John. Ch., 347; 1 Rus. & M., 371.   "This principle of looking to the lunatic's advantage alone is pursued in fixing the amount of maintenance, (says Mr.

Adams,) and provisions may be made for the lunatic's benefit, though they may not be such as he is legally bound to incur; *e. g.*, if the father of a family be lunatic, the court will not consider the mere legal right of his wife and children, but will make an allowance suitable to their station in life." Adams' Eq., 297. A court of chancery will listen to the voice and instincts of our nature, and order the committee to perform all such acts (as before remarked) which the lunatic would and was bound to do if he were sane. *Ex parte* Whitbread, 2 Merr., 99. In New York, the court has power to decree maintenance, even for adopted children. See matter of Heeney, 2 Barbour Ch. R., 326. In England, allowance was made out of lunatic's estate for a daughter about to be married. *In re* Drummond, 1 Myl. & C., 627. So for brothers and sisters. *Ex parte* Whitbread, 2 Merr., 99. And for illegitimate children. *Ex parte* Haycock, 5 Russell, 154. So for nephews. *In re* Blair, 1 Mylne & Craig, 300; *vide* also Shelford on Lunatics, 160.

In Ireland it was held that the ——— court, on proper case made, will grant increased maintenance to lunatic, in order that the same may be applied to the support of near relatives of the lunatic. *In re* Creagh, 1 Dr. & W., 323. In Pennsylvania, decrees are made for support of the family of lunatic. *In re* Eckstein, Parsons' Selected Cases, 69.

It will no doubt be argued that the debts against the estate of Myrick should be paid and have the preference; but Mr. Adams remarks, " *there is no instance of paying debts without reserving a sufficient maintenance*," &c. It will be seen on pages 297, 627, that though the allowance is nominally made for maintenance of lunatics, it *includes* for the family also, which is decreed under the name of maintenance for the lunatic himself. Adams' Eq., 297, 627. In other words, the allowance to lunatic will be increased so as to *include* that of his family. Court will decree maintenance, though there are debts. *Ex parte* Dikes, 8 Vesey, 79; Hastings *ex parte*, 14 Vesey, 182. It is unnecessary to multiply authorities on this point.

The allowance for counsel fees and court expenses was proper. The application of Mrs. Myrick for this purpose, and her bill of complaint, are substantially proceedings *in rem*, and the court in its action takes hold of the estate of Myrick, holds it subject to its decrees, and it becomes thereby *in custodia legis.* She states she has no property of her own, and the estate of Myrick is the appropriate fund which should bear the burthen of her application. In courts of equity the prevailing party is entitled to costs, and these are always matters of discretion for the court. 1 John. Ch. R., 166; Eastburn vs. Kirk, 2 John. Ch. R., 317; 3 Daniel Ch., 1516. Appellate tribunals seldom revise the exercise of discretion of the court below as to costs. 4 Fla. R., 441. In cases of divorce, a reasonable counsel fee is allowed against the husband, when the wife applies for a divorce, Graves vs. Graves, 2 Paige, 62. In the matter of Lyth, 3 Paige Ch'y Rep., 251, it was held, on petition of wife of a lunatic, *having no property independent of that of her husband,* for the removal of the committee, she will be entitled to costs out of the estate, though the petition is denied, if she had reasonable cause for the application.

The theory upon the subject of lunacy (with proper deference) may thus be summarily stated: Upon the finding of an inquisition in lunacy, (and there was an inquest here,) the person and property or estate of the declared lunatic become subject to the order and jurisdiction of a court of chancery, the chancellor, with us as in England, representing the State or sovereignty; for, as Judge Gaston says: "In every civilized community, the State is bound to take care of those who, by reason of their imbecility and want of understanding, are unable to take care of themselves." Saying nothing of the British Statutes conferring this power upon courts of chancery, (indirectly, to be sure—first upon the King, and by him delegated to the chancellor,) the statutes of 1856, p. 26, clearly clothes our courts of chancery with plenary power, when, in section 2 of said act, it declares that if the person is declared a lunatic, or insane, "the judge

shall make such order or decree as is *usual or necessary* in such cases." The decree or order for the maintenance of the family of Myrick is, we have seen, a usual and common one by the English and American decisions. The order is interlocutory and temporary, and unless for the most cogent reasons, will not be disturbed. It is for *ad interim* support of Mrs. Myrick until the coming in of a final decree. As before remarked, it being a proceeding virtually *in rem*, many of the rules of pleading as to parties, &c., in ordinary cases, do not apply. 2 Iredell Ch., 297. The estate and all its incidents, as to their disposition, are within the jurisdiction and discretion of a court of equity. In the case of Latham vs. Wiswall, 2 Iredell Ch., 297, already cited, upon an order of sale of the lunatic's estate, a creditor intervened and objected to the decree on the ground that he *was not a party to it*, but the court said the objection could not avail; and Judge Gaston places his opinion upon the ground that it was analogous to a proceeding *in rem*.

*C. C. Yonge*, for Appellee, and in reply to brief of Appellant.

Complainant filed a bill against Kilbee and Barnes, charging that she was married in January, 1866, to John D. Myrick, and that he soon became insane and was committed to asylum, and on his discharge that Kilbee presented him with two deeds of trust for execution, conveying the whole of his estate.

That soon after, Wm. D. Barnes, the agent of Kilbee, had inquisition of lunacy made and Myrick was sent back to asylum.

That complainant is in needy circumstances, and without the means of support, or means to prosecute a suit for maintenance.

It is objected,

First. That there is defect of parties.

1. That Barnes as agent is an improper party.

2. That the creditors of J. D. Myrick should be parties.

Second. That complainant is not privy in blood or in representation, and cannot ask the relief prayed.

39

Reply. That doctrine cited against making an agent a party is subject to the exception of cases where fraud is charged, or shown by the allegations and proofs. 1 Dan., 345.

2. That in proceedings for maintenance of lunatic which includes his family, the court will not regard the claims of creditors, and they need not be parties. *In re* Salisbury, 3 John. Ch., 347; Adams' Equity, 297; 2 Merivale; 2 Barbour, 326. Will order increased allowance for lunatic, that it may be used for support of near relations. 1 D. and W., 323.

No case of payment of debts without reserving a sufficient maintenance, and in 2 Iredell Ch., 297, objection to decree on ground that creditor not a party, overruled.

3. That this is a proceeding *quasi in rem* against the estate of the lunatic husband, which is within the jurisdiction of the court, and the strict rules of pleading with regard to parties do not apply. See 2 Iredell Ch., 297, which was ruled on this ground.

4. That this is not an appeal from a final decree, and therefore does not involve the merits of the case either as to the law or to the facts, but is from an order giving temporary allowance, an allowance *ad interim*, and if there is defect of parties, these defects could have been remedied by amendment under the rules in chancery practice.

5. That complainant, or wife of John D. Myrick, has a standing in equity, entitling her to ask relief out of the fund or property that is within the jurisdiction of the court.

1st. Because of the marital obligations of the husband to support and maintain the wife, and the resulting equity to claim this support out of such property of the husband as is within the jurisdiction of the court.

That under the influence of this equity, the court will not permit a fraudulent deed executed by an insane husband to stand in the way of the rights of the wife.

That on filing bill of divorce and alimony, court will grant

temporary support to wife. Mix vs. Mix, 1 John Ch., 108; Ward vs. Ward, 2 Paige, 247.

2. That fraud vitiates and destroys every transaction as between parties who have the right to complain of it.

That the wife has the right to complain, as her maintenance and support depend upon the protection and preservation of the property claimed to have been conveyed.

3. That as wife of the lunatic she has a right, future and contingent, it is true, to a share of the personal estate of the husband to become vested at his death under the dower laws of the State; and as to the realty, an existing and present right, as no conveyance can be made by him of her right of dower without her relinquishment and renunciation. Show., 184.

4th. That all that was required to authorize the temporary allowance made by the Chancellor was a *prima facie* case, and this was made by showing that the relation of wife existed, that she was in destitute circumstances, and that the husband was lunatic at the time of the execution of the joint deeds, reserving for future consideration the full proofs to be taken by depositions or otherwise.

Acts done before a commission of lunacy, but overreached by the retrospective finding of the jury, the inquisition is presumptive evidence of incapacity. 2 Paige, 427.

That where lunacy is once established it is presumed to continue, and if an act of the lunatic is sought to be upheld it must be proved to have been done in a lucid interval. Story's Eq. Juris., § —; Shelford on Lunacy.

That objections for defect of parties should have been made by demurrer or other proper pleading in court below. See 1 Dan., 350, and Note 2.

That the only matter proper for the review of this court is whether there was sufficient evidence before the Chancellor to warrant the two orders made by him. I insist that the allegations in the bill were sufficient to warrant the reference to the

master to report what would be a proper temporary allowance, and that the report of the master constituted a sufficient basis for the temporary allowance under the interlocutory order, and that it was not required that the master should have reported the evidence on which his allowance rested.

WESTCOTT, J., delivered the opinion of the court:

This bill is brought by Marie E. Myrick, the wife of John D. Myrick, a lunatic, against John R. Kilbee and W. D. Barnes, his agent. It alleges that her husband, being of unsound mind and incapable of contracting at the time, executed on the 27th of October, A. D. 1866, deeds of conveyance covering his entire estate to John R. Kilbee, upon certain trusts therein specified; that W. D. Barnes is the agent of the trustee now in possession of the property conveyed by the deed, which is located in Florida, in Jackson county, in part, while a portion of the property embraced in the deed is situated in the State of Virginia. The bill alleges further, that she was induced to relinquish her dower interest in the property by misrepresentation of the trustee, Kilbee. The prayer of the bill is that the deeds may be declared void and inoperative, that an account may be taken of the rents and profits of the property in the hands of the trustee, that a receiver may be appointed to take possession of the property, that a guardian of the person and estate of the lunatic may be appointed, and that a proper allowance may be made for the support and maintenance of John D. Myrick, and of the complainant, stating that she is in destitute circumstances. It is necessary to state that the record discloses that a commission of lunacy had been issued, and the husband had been adjudged a lunatic subsequent to the execution of the deeds and before bill filed. Upon filing the bill the chancellor passed an order directing the master to "make a report as to what amount will be proper and suitable as a temporary allowance for the support and maintenance of the wife, and the neces—

. sary costs of suit, counsel fees, &c., until the cause shall be brought to a hearing."

The defendants move to vacate this order shortly after it is made, and the motion is denied. Subsequently the master reports sixty dollars per month as a proper allowance for the wife, and five hundred dollars as a proper amount for costs of litigation. This report is excepted to on various grounds by defendants, which it is unnecessary to mention. After argument the chancellor overruled the exceptions, confirmed the report, and passed an order directing the defendants to pay to the master for the use of complainant "the sum of sixty dollars per mouth for maintenance, and the sum of five hundred dollars for costs of litigation and counsel fees."

An appeal is now prosecuted here by the defendants, and they pray a reversal of the decrees and orders made by the chancellor upon several grounds.

As the bill alleges that the whole estate of the lunatic was embraced in these deeds, and consequently there is nothing now in the hands of any committee or guardian of the lunatic, if, indeed, there ever was any committee, which is not disclosed by the bill, we deem it unnecessary to pass upon any of the grounds upon which the reversal is prayed except that which raises the question as to allowance, and whether the wife of a lunatic can set aside a conveyance of her husband made before a commission of lunacy, on the ground of his incapacity to contract arising from unsoundness of mind, by bill filed against the trustee named in the deed of the husband and his agent in possession of the property.

A person being found a lunatic upon commission and inquiry, a committee or guardian should be appointed to take possession of his estate and manage it under the direction of the chancellor, who has plenary powers in matters of this character. In this case the bill does not disclose that there ever was appointed a guardian or committee.

If the lunatic has, anterior to these proceedings, but while of

unsound mind, entered into a contract which should be set aside on that ground, the lunatic by his guardian must under the statute of this State institute the proceeding.

The wife may be allowed a reasonable allowance from the estate, nor is her right limited to any mere legal demand, and a chancellor upon proper proceedings would allow it if there was any estate to allow it from. In divorce cases the chancellor will tax even the faculties of the husband, but the lunatic is without anything except estate.

If in a case such as this is represented to be by the bill, the guardian should decline to institute any proceeding to set aside the deeds of the lunatic, we can see, as present advised, no objection to the wife bringing the matter to the attention of the chancellor by petition praying that the guardian might be controlled to this end, and the chancellor would then exercise his discretion.

If a lunatic husband enters into a contract divesting himself of his entire estate, and leaving his wife and children without support and helpless, a court of chancery will not fail to be active when appealed to, and in a proper case will control the committee or guardian. There is no doubt a remedy, but that remedy is not by bill *brought by the wife* against the grantee of the husband in possession. Upon the lunacy of the husband she does not become his legal representative like an administrator in case of his death.

The lunacy of the husband does not increase the marital obligation of the husband to support the wife in such a way as to invest her with his rights and clothe her with power to institute suits to set aside his deeds, and we see no more authority for the wife bringing a bill to set aside the deed of the husband on the ground of his insanity at the date of its execution, than we do for the wife to file a bill to set aside the deed of the husband on any ground which would avoid it if set up by himself. For instance, fraud in the grantee, in numerous instances illustrated in the books.

The common law doctrine was that no man of full age should be admitted to stultify himself, and it has been insisted that a court of equity could not give relief in the face of the common law rule, and set aside the deed of the lunatic upon his request or that of his committee; a distinction being taken between the lunatic himself and his heirs, executors or administrators after his death, the last being permitted under certain circumstances to avoid his acts after his death upon the ground that he was *non compos mentis.* 1st Story, § 225; but that a court of equity will now avoid his acts upon proper proceedings, and in a proper case, is settled notwithstanding the common law maxim. The ground upon which a court of equity interferes is fraud; every person being deemed guilty of meditated fraud when he deals with them with knowledge of their incapacity. Even this rule, however, has its exceptions, as all deeds of *persons of unsound* mind are not to be set aside necessarily. There can be no doubt, and the proposition is too plain to be questioned, that the wife could have no standing in a court of equity to set aside the deed of her sane husband for fraud, which would enable him to do it, and the same is the rule here. 8 Paige's Chy. Rpts., 612.

There are other objections urged to the proceedings in the court below, but we deem it unnecessary to refer to them.

There is no fund here subject to the order of the court, there is no guardian or committee, and we do not see how the defendants can be directed to make payments when they allege that they are in advance to the estate, and the contrary is not made to appear, and besides, no *prima facie* case is here made to justify the allowance for counsel fees.

It is ordered, adjudged, and decreed that the decree of the chancellor making a temporary allowance to Marie E. Myrick, and allowing court expenses in this case, is set aside and reversed, and that the cause be remanded for such proceedings as are conformable to this opinion and the principles of equity.