# LUHRS *v.* HANCOCK.

APPEAL FROM THE SUPREME COURT OF THE TERRITORY OF ARIZONA.

No. 176. Argued and submitted March 7, 1901.—Decided May 13, 1901.

By the provision in Act 68 of the Laws of the Territory of Arizona that the common law of England, so far as it is consistent with and adapted to the natural and physical condition of this Territory and the necessities of the people thereof, and not repugnant to or inconsistent with the Constitution of the United States, or bill of rights, or laws of this Territory, or established customs of the people of this Territory, is hereby adopted, and shall be the rule of decision in all the courts of this Territory, the common law was not made unqualifiedly the rule of decision, but that law, as modified by the conditions of the Territory, and changes in the common-law relation between husband and wife had been expressed in statutes prior to the passage of the act of 1885.

By a conveyance from a husband to his wife, property does not lose its homestead character.

The deed of a person alleged to be insane is not absolutely void; it is only voidable, and may be confirmed or set aside.

The inquiry as to the insanity of Mrs. Hancock was not open to the appellant.

THE case is stated in the opinion of the court.

*Mr. L. E. Payson*, for appellant, submitted on his brief.

*Mr. A. S. Worthington* for appellee.   *Mr. C. F. Ainsworth* was on his brief.

Mr. Justice McKenna delivered the opinion of the court.

This is an appeal from the judgment of the Supreme Court of Arizona, affirming the judgment of the district court of the third judicial district of the Territory, rendered in an action of ejectment originally brought against Hancock and his wife, and to which action Pemberton was afterwards made a party.

The facts as found by the Supreme Court are as follows :

"This was an action by the appellant to recover possession of five certain lots in the city of Phœnix, and for the value of the rents and profits thereof.   The complaint is in the usual form in ejectment cases.   The defendants William A. Hancock and Lilly B. Hancock, husband and wife, answered, pleading 'not guilty,' and setting up the statute of limitations in bar of the plaintiff's right to recover.   Similar defences were imposed by the defendant Thomas W. Pemberton, who, by way of cross-complaint, also pleaded his ownership and possession of said premises, and asked for affirmative relief as against the adverse claims of the plaintiff.   Upon the trial in the court below the plaintiff was adjudged to have no right, title or interest in said property, and the defendant Pemberton was adjudged to be the owner and entitled to the possession thereof.   From this judgment of the district court the plaintiff prosecutes an appeal.

"The record shows the material facts in the case to be substantially as follows : On February 27, 1886, the legal title to the premises in controversy was vested in William A. Hancock, the common source from which both the plaintiff and the defendant Pemberton deraign title.   The said premises were inclosed as one tract, with a dwelling house situated upon lots 14 and 15, and had been occupied by the defendants William A. Hancock and Lilly B. Hancock as a homestead ever since 1873. On the said 27th day of February, 1886, and while the said premises were so occupied and claimed as a homestead, the said William A. Hancock, for the consideration of love and affec-

tion, deeded the same by a direct conveyance to his said wife, Lilly B. Hancock. The value of the said property so conveyed did not at that time exceed the sum of $4000. On March 5, 1892, certain creditors (Herrick & Luhrs) obtained a judgment in the district court of Maricopa County against the said William A. Hancock for the sum of $2524.02 upon an indebtedness contracted by him November 1, 1883. An execution was issued upon said judgment April 5, 1892, and the same was levied upon the premises here in controversy as the property of William A. Hancock. No proceeding was had to set aside the anterior conveyance to his wife, but the said real estate was formally sold under said execution to the plaintiff George H. N. Luhrs, to whom a sheriff's deed was made on February 4, 1893, conveying the title which is the basis of his ejectment suit. On March 21, 1892, the said Lilly B. Hancock and William A. Hancock had borrowed from one Robert Allstatter the sum of $2600, and on the same day, to secure the payment thereof, had executed to the said Allstatter a mortgage upon all of the aforesaid premises. This mortgage, presumably executed in good faith, was subsequently foreclosed, and the defendant Thomas W. Pemberton became the purchaser at the foreclosure sale. He received the sheriff's deed for the said premises on February 14, 1895, took possession thereof from the Hancocks, and has since paid the taxes and made valuable improvements upon the property. The plaintiff Luhrs was never in the possession of the premises."

The Supreme Court also certified that the exceptions on the trial to the rulings of the court were (1) to the admission of the deed dated February 27, 1886, from Hancock to his wife; (2) the rejection of evidence tending to prove that Hancock made an application for a homestead under the public land laws of the United States, and filed an application in the land office of Tucson, completed his homestead proofs and received a certificate from the receiver for the land applied for. A certified copy of the papers was offered in evidence, but ruled out. (3) The rejection of evidence of the insanity of Mrs. Hancock at the time she executed the mortgage to Robert Allstatter, the foundation of Pemberton's title. (4) The admission in evidence

of the note and mortgage over the objection of plaintiff claiming Mrs. Hancock insane and incompetent to make them.

We are confined to the assignment of errors based on these rulings. *Harrison* v. *Perea,* 168 U. S. 311; *Halloway* v. *Dunham,* 170 U. S. 615; *Young* v. *Amy,* 171 U. S. 179; 18 State, 27.

(1) The ground of objection to the deed is that it is void as a conveyance because void at common law, void under the statute restricting the conveyance of homesteads, and void because a fraud upon creditors, " and especially the plaintiff whose debt against Hancock then existed."

It is conceded that part of the property was a homestead in 1883 at the time of the commencement of the suit by Herrick and Luhrs, but that before judgment the homestead had ceased to exist, because, under the statute of the Territory passed March 10, 1887, a declaration in writing was necessary to be filed and recorded in the office of the county recorder to preserve the homestead exemption. In other words, it is conceded that the property was a homestead when Hancock executed the deed to his wife in 1886, but, it is claimed, that the deed being void and the property ceasing to be a homestead in 1889, it became subject to his debts.

Two questions arise : The validity of the deed, and the continuance of the homestead. We need not now express an opinion as to the latter. The former should be answered in the affirmative. The contention is that the deed was void because it was made directly by Hancock to his wife without the intervention of a trustee, and the contention is claimed to be supported by act No. 68 of the laws of the Territory. That act provided as follows :

"The common law of England so far as it is consistent with and adapted to the natural and physical condition of this Territory and the necessities of the people thereof, and not repugnant to, or inconsistent with, the Constitution of the United States, or bill of rights, or laws of this Territory, or established customs of the people of this Territory, is hereby adopted and shall be the rule of decision in all the courts of the Territory."

It will be observed not the common law unqualifiedly was

made the rule of decision, but that law as modified by the conditions of the Territory, and changes in the common law relation between husband and wife had been expressed in the statutes prior to the passage of the act of 1885. A community of property of the marriage was provided for; each of the spouses could have separate property, and of hers she had the absolute disposition. The separate legal individuality of the wife, therefore, was recognized, and the doctrine which confounded her being with that of her husband was abolished. The conditions had passed away which caused it to exist. New and more natural conditions had arisen, and the act of 1885 adopted the common law only so far as it suited to those conditions. This was the view of the Supreme Court of the Territory and we adopt it. That learned court could certainly know what the natural conditions of the Territory and the necessities of its people were, and how far consistent with them the laws of a past time were.

Indeed the modification of the common law as to the property relations of husband and wife generally in this country was expressed by this court in *Jones* v. *Clifton,* 101 U. S. 225. In that case the assignee in bankruptcy brought suit to set aside two deeds made by Clifton to his wife, executed, as it was contended, to defraud creditors. They were asserted to be void for the reason, among others, " because made directly to his wife, without the intervention of a trustee, and so passed no interest to her." To the contention it was replied that the deeds were voluntary settlements upon his wife. " And," Mr. Justice Field said, speaking for the court, " it cannot make any difference through what channels the property passes to the party to be benefited or to his or her trustee—whether it be by direct conveyance from the husband or through the intervention of others. The technical reasons of the common law arising from the unity of husband and wife, which would prevent a direct conveyance of the property from him to her for a valuable consideration, as upon a contract or purchase, have long since ceased to operate in the case of a voluntary transfer of property as a settlement upon her. The intervention of trustees, in order that the property conveyed may be held as her separate estate beyond

the control or interference of her husband, though formerly held to be indispensable, is no longer required." This doctrine applies to a homestead as well as other real estate, unless the laws of the Territory prescribe the form or put limits upon the alienation of a homestead. It is claimed that the law does, and paragraph 2141 of the Compiled Laws of 1887 is cited. The paragraph is as follows: ". . . no mortgage, sale or alienation of any kind whatever of such land (the homestead) by the owner thereof, if a married man, shall be valid without the signature of the wife to the same, acknowledged by her separately and apart from her husband."

A statute similar to that of Arizona came up for construction in *Burkett* v. *Burkett*, 78 California, 310, and, following the principle of other cases in the same court and cases in other States, it was held that the object of homestead laws was to protect the wife and through her the family, and that a conveyance of the homestead by the husband to the wife was not forbidden by the statute, and was therefore valid. The following cases were cited: *Spoon* v. *Van Fossen*, 53 Iowa, 494; *Green* v. *Farrar*, 53 Iowa, 426; Thompson on Homesteads, sec. 473; Platt on Rights of Married Women, sec. 70, p. 225; *Riehl* v. *Bingenheimer*, 28 Wisconsin, 86; *Baines* v. *Baker*, 60 Texas, 140; *Ruohs* v. *Hooke*, 3 Lea, 302; 31 Am. Rep. 642; *Harsh* v. *Griffin*, 72 Iowa, 608.

But independent of other cases, the court said it would not "hesitate to hold such conveyances valid," and disregarded as unimportant the differences which were pointed out between the statutes of the States whose decisions were cited and the statute of California.

The contrary has been held by the Supreme Court of Illinois in *Kitterlin* v. *Milwaukee Ins. Co.*, 134 Illinois, 647, but the reasoning of the other cases we think is the better, and besides their number is not without weight.

The Supreme Court of California held, as the Supreme Court of Arizona held in the case at bar, that by a conveyance of the husband to the wife the property did not lose its homestead character. As the title certainly passed, that is unimportant; and equally unimportant whether the homestead was or was

not divested by the act of 1887, in the view we take of the effect of appellant's judgment against Hancock. It cannot prevail against the mortgage of Allstatter unless it became a lien upon the land covered by the homestead. It is so contended but unjustifiably. The deed from Hancock to his wife was prior to the judgment. The mortgage to Allstatter was subsequent to the judgment but prior to the levy of the execution, and the latter can only relate to and be supported by the judgment, if the judgment became a lien upon the property. It has been held in some jurisdictions that a judgment against a debtor becomes a lien on land fraudulently conveyed by him. In other jurisdictions it has been held otherwise, and this court has held otherwise. *Miller* v. *Sherry,* 2 Wall. 237, was a creditor's bill to set aside fraudulent conveyances, and a question arose as to the effect of the judgment upon land previously conveyed. The court said : " The judgment obtained by Mills and Bliss was the elder one, but it was subsequent to the conveyance from Miller to Williams. It is not contended that the judgment was a lien on the premises. The legal title having passed from the judgment debtor before its rendition, by a deed valid as between him and his grantee, it could not have that effect by operation of law."

The rule and the reason for it are admirably expressed by Judge Deady in *In re Estes,* 3 Fed. Rep. 127, as follows :

" In my opinion, the lien of a judgment which is limited by law to the property of or belonging to the debtor at the time of the docketing does not nor cannot, without doing violence to this language, be held to extend to property previously conveyed by the debtor to another by a deed valid and binding between the parties. A conveyance in fraud of creditors, although declared by the statute to be void as to them, is nevertheless valid as between the parties and their representatives, and passes all of the estate of the grantor to the grantee; and a *bona fide* purchaser from such grantee takes such estate, even against the creditors of the fraudulent grantor, purged of the anterior fraud that affected the title. Such a conveyance is not, as has been sometimes supposed, ' utterly void,' but it is only so in a qualified sense. Practically it is only voidable, and that at the instance of cred-

itors proceeding in the mode prescribed by law, and even then not as against a *bona fide* purchaser. The operation of a lien of a judgment, being limited by statute to the property then belonging to the judgment debtor, is not a mode prescribed by which a creditor may attack a conveyance fraudulent as to himself, or assert any right as such against the grantor therein. This lien is constructive in its character, and is not the result of a levy or any other act directed against this specific property. It is the creature of the statute, and cannot have effect beyond it."

(2.) The assignment of error based on the ruling of the court in rejecting evidence of an application by Hancock to enter a homestead under the public land laws is disposed of by the views expressed above. As the title passed to Mrs. Hancock by the deed to her from her husband, and from them to Pemberton through the mortgage executed to Allstatter, it is not necessary to consider, as we have said, whether the property continued or ceased to be a homestead.

(3.) The third and fourth exceptions to testimony were based on the alleged insanity of Mrs. Hancock when she executed the note and mortgage to Allstatter. But we do not think that inquiry was open to the appellant. The deed of an insane person is not absolutely void; it is only voidable; that is, it may be confirmed or set aside. 159 U. S. at 547. Besides, the title of Pemberton, one of the defendants in error, comes through a judgment against Mrs. Hancock, and that cannot be attacked collaterally. *Ingraham* v. *Baldwin,* 9 N. Y. 45; *Kilbee* v. *Myrick,* 12 Florida, 419; *Foster* v. *Jones,* 23 Georgia, 168; *Speck* v. *Pullman Car Co.,* 121 Illinois, 33; *Maloney* v. *Dewey,* 127 Illinois, 395; *Woods* v. *Brown,* 93 Indiana, 164; *Boyer* v. *Berryman,* 123 Indiana, 451; *Stigers* v. *Brent,* 50 Maryland, 214; *Heard* v. *Sack,* 81 Missouri, 610; *McCormick* v. *Paddock,* 20 Nebraska, 486; *Lamprey* v. *Nudd,* 29 N. H. 299; *Brittain* v. *Mull,* 99 N. C. 483; *Henry* v. *Brothers,* 48 Penn. St. 70; *Wood* v. *Bayard,* 63 Penn. St. 320; *Grier's Appeal,* 101 Penn. St. 412; *Denni* v. *Elliott,* 60 Texas, 337.

The other questions discussed by counsel we do not think it is necessary to consider.

*Judgment affirmed.*