CRAWFORD et al. v. BROUSSARD et al.[*]

(Circuit Court of Appeals, Fifth Circuit. June 25, 1919. On Petition for Rehearing, October 7, 1919.)

No. 3325.

1. BANKRUPTCY ⬤⟹178(1)—FRAUDULENT TRANSFER OF PROPERTY.

A transaction by which a creditor of a known insolvent within four months prior to his bankruptcy took in satisfaction of its debt a growing rice crop on land rented by the debtor, who was to harvest and deliver the crop, the creditor paying the rent and all expenses, *held* fraudulent as against other creditors and voidable by the trustee.

2. FRAUDULENT CONVEYANCES ⬤⟹181(1)—RIGHTS OF PURCHASER ON SETTING ASIDE PRIOR LIEN.

A fraudulent purchaser of property is not entitled to have it subjected to the satisfaction of a lien on it which existed in his favor prior to his purchase.

Batts, Circuit Judge, dissenting.

Appeal from the District Court of the United States for the Eastern District of Texas; Gordon Russell, Judge.

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

*Certiorari denied 251 U. S. 560, 40 Sup. Ct. 219, 64 L. Ed. 414.

Suit in equity by J. E. Broussard and others against Walter J. Crawford, trustee in bankruptcy of E. F. Moore, and others. Decree for complainants, and defendants appeal. Reversed.

U. F. Short, of Dallas, Tex. (Smith & Crawford, of Beaumont, Tex., and E. R. Spotts, of Houston, Tex., on the brief), for appellants.

A. D. Lipscomb and Sol E. Gordon, both of Beaumont, Tex., for appellees.

Before WALKER and BATTS, Circuit Judges, and SHEPPARD, District Judge.

WALKER, Circuit Judge. [1] This suit was instituted in July, 1917, by Beaumont Rice Mills, a corporation, and by individuals who prior to the organization of that corporation were members of a partnership which did business in the name of Beaumont Rice Mills (which will be referred to as the appellee), against the appellant, the trustee in bankruptcy of E. F. Moore. The averments of the bill as it was amended show the following state of facts: On and prior to January 1, 1906, E. F. Moore was indebted to sundry parties, including the appellee, in considerable amounts, the appellee holding a first mortgage on about $3,000 worth of live stock and implements to secure a debt then owing to it. About January 1, 1906, Moore verbally agreed with J. E. Broussard, as manager of the appellee, that he would rent for the year 1906 280 acres of land known as the McCrimmin farm, and plant the same in rice, devoting the crop to the payment of the appellee, on condition that the latter should advance about $1,000 for seed and other indispensable things, and the charges for rent, water, cost of harvesting, sacking and hauling, and saving said rice being first deducted or paid by the appellee. Under that agreement Broussard gave satisfactory assurances to the landlord and obtained for Moore the use of said land and made him said indispensable advances in the amount of $1,139.80, prior to and during the growing of said crop, and paid said rental in the amount of $810, as had been agreed. On April 5, 1906, Moore executed a conveyance of said crop to Broussard, the parties intending that the latter should hold the same as trustee for the benefit of the appellee. No part of the crop had been planted at the time said verbal agreement was made. Not all, if any, of it was planted when said conveyance was executed. The advances mentioned were necessary to be made because Moore was insolvent when they were made. About June 15, 1906, the said agreement was modified to this extent, viz: That the beneficial interest of the appellees in said crop should become absolute, and that the same should be accepted by it in satisfaction of all claims held by it against Moore, but that Moore should complete the cultivation, harvesting, and saving of the crop, at the cost and expense of the appellee for all, save the supervision, which was to be given by Moore, and, after such modification of the agreement, the appellee abandoned its above-mentioned first mortgage on stock and implements, and its claim of indebtedness as against Moore. While the crop was growing, Moore went into bankruptcy. The crop went into the possession of Moore's trustee in bankruptcy, who per-

mitted Moore to harvest it, the appellee paying the expenses of harvesting, such expenses, added to the amounts advanced, and that paid as rent, aggregating $5,751.52. The property covered by the above-mentioned mortgage of Moore to the appellee went into the bankrupt estate, the appellee asserting no claim to it. There was realized from the sale of the rice crop by Moore's original trustee in bankruptcy $11,-651.25, which, with interest earned on that sum, making a total of $13,-130.50, went into and still remains in the hands of the appellant, Moore's present trustee in bankruptcy. The prayers of the bill were: That the trustee in bankruptcy be required to pay the amount of that fund to the plaintiff, or that the trustee be ordered to pay to the plaintiff out of that fund the said sum of $5,751.52, with interest from November 1, 1906, and in the alternative that said fund in the hands of the trustee be charged with the amount secured by said mortgage to the appellee; and, if neither of the foregoing prayers be granted, that said mortgage to the appellee be foreclosed, and that the trustee be required to pay out of the fund in his custody the amount of the debt secured by said mortgage.

The record discloses that on July 16, 1906, Moore filed his voluntary petition in bankruptcy, and was adjudged bankrupt on the 25th day of the same month. It appears on the face of the bill that he was known to be insolvent when about June 15th preceding the filing of the petition in bankruptcy the appellee acquired the absolute ownership of the rice crop, which before stood as security for advances made and to be made. The evidence showed that when that transaction occurred the rice crop was in existence and had been irrigated. A result of the transaction was that the relation of the appellee to the crop was changed from that of a creditor having security to that of absolute owner of the thing which before had stood as security, from which was realized greatly more than the amount of the outlay required to obtain it, including the debt which it had secured. This happened one month and one day before the filing of the petition on which the former debtor was adjudged bankrupt, and when his insolvency was known to both parties to the transaction.

The averments of the bill as amended do not show that the appellee is entitled to the proceeds of the sale of the rice crop. The facts averred do not show that its relation to the transaction of about June 15, 1906, was that of a purchaser in good faith and for a present fair consideration. The value of the rice crop at the time of its transfer was not averred. The amount realized from it indicates that it was worth greatly more than the cost of it to the appellee. When that transfer was made the amounts chargeable against the rice crop were $1,139.80, the amount of the advances made up to that time, and $810, the amount of the rent for which the appellee had become responsible. A result of sustaining that transaction between the appellee and the bankrupt, the insolvency of the latter being known to both, would be to enable the appellee to realize out of the property transferred more than its debt and other consideration paid, while the remaining property left to the transferrer was insufficient to satisfy the demands of his other creditors. It is to be presumed that the transferrer intend-

ed the necessary consequences of his act, which, on its face, as it is disclosed by the averments of the bill as amended, included the hindering, delaying, or defrauding of his other creditors. The transfer having been made with such intent within four months prior to the filing of the petition in bankruptcy, it was void as against the transferrer's other creditors, unless the appellee was a purchaser in good faith and for a present fair consideration. Bankruptcy Act July 1, 1898, c. 541, 30 Stat. 564, § 67e (Comp. St. § 9651). As the appellee comes into court claiming the proceeds of the sale of the rice crop by virtue of that transfer, it is incumbent upon it to aver and prove what is requisite to give validity to that transaction. Jones v. Simpson, 116 U. S. 609, 614, 6 Sup. Ct. 538, 29 L. Ed. 742. This it failed to do, in that its bill as amended shows that the transfer relied on was such a one as was void as against the transferrer's other creditors, unless the transferee was a purchaser in good faith and for a present fair consideration, but does not show that the appellee was such a purchaser.

The decree in favor of the appellee was based upon a finding to the effect that, under the original arrangement between it and Moore as to the 1906 rice crop to be grown on the McCrimmin farm, that crop was to go to the appellee for the purpose of clearing up the indebtedness of Moore to the appellee. It is to be inferred from expressions contained in the opinion rendered by the District Judge that his conclusion was "that the rice crop belonged to the Beaumont Rice Mills before it was ever planted," as was stated by Moore in testimony given before the referee in bankruptcy in a former proceeding or suit, which testimony was introduced by the appellee in this case, Moore having died before this suit was brought. There was no allegation to support such a finding. The state of facts disclosed by the appellee's amended bill has been set out above. That the original bill did not assert a claim that when the rice crop was planted it belonged to the appellee is shown by the explicit averment of that pleading that the claim of the appellee to the proceeds of the sale of the rice crop was based "on the fact that said crop of rice had first been conveyed by the bankrupt, E. F. Moore, to said J. E. Broussard in trust for Beaumont Rice Mills, as security for debt, and later transferred absolutely by said E. F. Moore, the owner of the same, to Beaumont Rice Mills before the bankruptcy of the said E. F. Moore." We do not think that the evidence was such as to warrant a finding that the appellee became the owner of the rice crop prior to about one month before the filing of the petition under which Moore was adjudged bankrupt. J. E. Broussard, the president and manager of the appellee, represented and acted for it in all its dealings with Moore in regard to the rice crop in question. He was a witness for the appellee. The following are extracts from his testimony:

"I knew E. F. Moore. He was killed by the Frisco Railroad 2 years ago. Bridgeman was his son-in-law. They were rice farmers prior to 1906. We advanced money for them to make rice crops for a number of years."

In reference to an instrument in the form of a bill of sale of the rice crop made by Moore to Broussard, dated April 5, 1906, the witness stated that that instrument was filed for registration as a chattel

mortgage in the county clerk's office, and was indexed and recorded as such, and, in reply to the question, "What was the purpose of it with reference to the indebtedness of Moore?"   said:

"It was the intention that the proceeds of the crop should be applied on the debt that Moore and Moore & Bridgeman owes. * * * In addition to the advancement for payment of the rent on the McCrimmin land, the Beaumont Rice Mills made advances for seed rice, and also advanced some money to put the crop in. * * * In all we advanced Moore & Bridgeman before they went into bankruptcy $1,139.80 for seed, rice, feed, and cash for labor, etc. That was advanced against the crop. * * * After the rice was planted and growing on the McCrimmin farm I went on the place with Mr. Moore. I had an agreement with Moore, after the rice was up and growing and had been watered, that he would deliver the rice crop at the station, and we would take it in settlement of the Moore & Bridgeman and the Moore and Gregg indebtedness to the Beaumont Rice Mills. They were to harvest the crop and deliver it at the railroad station in satisfaction and cancellation of the indebtedness they owed, and the relinquishment of the mortgages we held against their property. * * * If they had been compelled to adjust their affairs in June, 1906, I would say they would be insolvent. I could not state the exact time in June that I had this contract with him to let us purchase the McCrimmin rice. I could not state exact date, but it was after the rice was worked, between the 1st and 30th of the month. * * * The agreement I had with Moore was that he was to harvest the crop at his own expense and deliver it to Beaumont Rice Mills. At the time I had that agreement with Moore we made no entry of it on our books. It is a fact that we made an agreement in June, 1906, to take that rice crop in satisfaction of the indebtedness due us, and made no entry whatever on the books at that time."

The above extracts show that the court's findings were not supported by the testimony of Broussard, who alone acted for the appellee in the transaction, and remained interested in disclosing it in the light favorable to the appellee. The opinion rendered shows that the above-mentioned testimony of Moore and the testimony of P. A. Dowlen also were relied on to support the findings made. Moore's admission of previous statements and acts wholly inconsistent with his statement that "the rice belonged to the Beaumont Rice Mills before it was ever planted" were enough to show that his testimony had little probative value. The witness Dowlen, as the agent of the owner of the McCrimmin land, attended to the renting of that land for the year 1906. In the written lease, dated January 9, 1906, Moore was named as the lessee. Testifying more than 12 years after the occurrence, the witness, stated that about the time or before the contract was executed he, in behalf of the landlord and at the request of Moore, agreed to look to Broussard exclusively for the payment of the rent for the year 1906. Broussard testified that he agreed to pay the rent at the time the land was rented. Yet the written lease contract was made as above stated, and the facts that it was so made and remained unchanged are not explained. From the entire evidence on this subject it well may be inferred that Moore was the renter as the rent contract showed, and that Broussard, acting for the appellee, which was making advances to Moore on the security of the crop, stood for the rent. That was not at all inconsistent with Moore continuing to be the owner of the crop until it was sold shortly before the bankruptcy as testified by Broussard. If the appellee had alleged that the rice belonged to it from the time the crop came into existence, in view of Brous-

sard's testimony and his relation to the transaction and his interest in behalf of the appellee, we think it could not properly have been said that the evidence as a whole warranted the findings upon which the decree appealed from was based. But the absence of allegations to support such findings is enough to condemn them.

[2] The appellee alleged a sale of the rice crop by Moore to it, and, relying upon its alleged ownership, claimed the proceeds of the subsequent sale of the crop by the trustee in bankruptcy. In the alternative it prayed the enforcement of the liens which existed in its favor before it bought the crop, if the relief based on its alleged ownership should not be granted. The averments showed a sale which was valid as between Moore and the appellee, but it did not show that that sale was valid as against Moore's creditors. Though the sale was voidable at the instance of creditors of the seller adversely affected by it, neither the seller nor the buyer can question it. As between them it passed to the latter all the estate of the former, and extinguished any lien on the subject of the sale held by the buyer prior to his purchase. Moore had ceased to be the owner of the rice crop before he was adjudged bankrupt. The crop did not pass to the trustee in bankruptcy subject to any lien on it in favor of the appellee, as whatever lien the appellee formerly had had was extinguished before the bankruptcy. While the grantee of property conveyed in fraud of the grantor's creditors holds it in subordination to the right of the creditors to have it subjected to the satisfaction of their demands, he is without right, when the conveyance is attacked by such creditors, to revive liens or incumbrances on the property which existed in favor of himself or others, but were discharged when he bought or while he was in possession as owner. A fraudulent purchaser of property is not entitled to have it subjected to the satisfaction of a lien on it which existed in his favor prior to his purchase. Railroad Co. v. Soutter, 13 Wall. 517, 20 L. Ed. 543; Barnes v. Chicago, M. & St. P. R. Co., 122 U. S. 1, 7 Sup. Ct. 1043, 30 L. Ed. 1128; Luhrs v. Hancock, 181 U. S. 567, 573, 21 Sup. Ct. 726, 45 L. Ed. 1005; U. S. Fire E. & C. Co. v. Joseph Halsted Co. (D. C.) 195 Fed. 295. In the first cited case it was decided that a fraudulent purchaser of property was not, as against defrauded creditors, entitled to charge against it, or be paid back, the amount of an incumbrance on it which such purchaser had lifted while in possession under his purchase. It was said in the opinion:

"Who are the complainants? Are they not the very bondholders, self-incorporated into a body politic, who, through their trustee and agent, effected the sale which was declared fraudulent and void, as against creditors, and made the purchase which has been set aside for that cause? Was it ever known that a fraudulent purchaser of property, when deprived of its possession, could recover for his repairs or improvements, or for incumbrances lifted by him whilst in possession? * * * But the complainants are wrong in asserting that the property was not theirs. It was theirs. Their purchase was declared void only as against the creditors of the La Crosse and Milwaukee Railroad Company. In other words, it was only voidable, not absolutely void. By satisfying those creditors they could have kept the property, and their title would have been good, as against all the world. The property was theirs; but, by reason of the fraudulent sale, was subject to incumbrance of the debts of the La Crosse Company. This was the legal effect of the decree declaring their title void. Therefore they were, in fact, paying off an incumbrance on

*their own property when they paid into court the money which they are now seeking to recover back."*

The appellee was not entitled to subject the proceeds of the trustee's sale of the rice crop to a lien existing in its favor prior to its purchase, as an effect of that purchase was to extinguish such lien. So far as appears, it had no mortgage on any property of Moore which went into the possession of his trustee in bankruptcy. A result of the alleged sale was a satisfaction of the previously existing mortgage on stock and implements. If after the transaction of about June 15, 1906, the appellee had a provable claim against Moore's estate in bankruptcy it lost the benefit of such claim by failing to assert it as required by the Bankruptcy Act.

The conclusion is that the averments of the bill as it was amended do not show that the appellee is entitled to the relief sought or any part of it. The decree in its favor is reversed, with direction that the bill be dismissed.

Reversed.


BATTS, Circuit Judge (dissenting). Among the creditors of E. F. Moore was the Beaumont Rice Mills, to whom he owed more than $6,000, secured by a mortgage on livestock, etc., worth about $3,000. He entered into an arrangement in January, 1906, with Broussard, manager of Beaumont Rice Mills, by which the McCrimmin farm was to be rented and planted to rice. Broussard was to make the necessary advances, and the net proceeds were to be applied to the Rice Mills' debt. Broussard paid the rent, and was recognized as the tenant. On April 5, 1906, Moore executed an instrument in the form of a transfer of the crop to Broussard, which was registered as a chattel mortgage. The parties testified, and the court found, that in June, 1906, a further agreement was made that the Rice Mills take the crop in discharge of its debt. The court also found that at the time of the sale "there was not a scintilla of evidence to show that anybody contemplated any bankruptcy proceedings." In July, 1906, Moore became bankrupt, Le Blanc, a member of the firm of Beaumont Rice Mills, becoming trustee. The crop was subsequently harvested and marketed, and $11,651.25 realized; the crop and price being much better than was expected at the time of the sale. The harvesting expenses, added to the rent, $813, and advances, $1,139.40, aggregated $5,209.45, leaving as the net proceeds an amount almost as large as the debt to the Rice Mills. The proceeds of the crop came into the hands of Le Blanc, and were by him turned over to the firm. When Le Blanc resigned as trustee, a controversy as to the proper custody of the fund resulted in litigation, determined, after a number of years, in favor of the trustee, Crawford, the crop at the time of the bankruptcy being in possession of Moore under the terms of the sale. Complainants thereupon sued for the fund, or, in the alternative, to establish a lien against it for the amount of the rent, advances, expenses of harvesting, and the prior debt. From a final judgment in their favor for the fund is this appeal.

Considering the uncertainty as to yield and price, the surrender of about $3,000 of other security, and the large expenditures required for harvesting, the sale could not be regarded as in fraud of creditors. The transaction was, in fact, greatly to the benefit of other creditors. But even if, for any reason, the sale should be held void, there is no doubt that complainants had a lien on the crop for the rent, and advances, and the debt; and the amount subsequently expended for harvesting also became proper charges against the property.

The trustee has, notwithstanding the opposition of complainants, taken over the crop or the fund which stands in its place. Under such circumstances, a trustee takes property subject to valid liens. The property in controversy, having now become money, the amount of such liens would properly be paid from it. The lienholder, making no claim against the estate generally, is not compelled to file his claim within the period prescribed by section 57n, Bankruptcy Act (Comp. St. § 9641). The trustee, not having discharged the lien upon taking possession of the property, may be sued, as contemplated by section 11d (section 9595) and within the period therein provided.

The judgment of this court will bring about results entirely inequitable. The crop would not have been raised and the fund created, except for the act of complainants in risking the money paid as rents and advances, and could not have been harvested, except for the expenditures made for that purpose. A judgment sustaining the sale, or a proper application of the fund to the liens, releases for the benefit of other creditors the property upon which complainants had a mortgage, and also gives to the other creditors the benefit of dividends which would otherwise have been payable to complainants. The judgment deprives complainants, not only of their original debt, but of all moneys expended by them in making and saving the crop. Complainants are deprived of legal rights, and the equitable principles recognized and applied in Hurley v. A., T. & S. F. Ry. Co., 213 U. S. 132, 29 Sup. Ct. 466, 53 L. Ed. 729, and the cases therein cited, are ignored.

I cannot concur in a judgment bringing about such palpably unjust results.

## On Petition for Rehearing.

PER CURIAM. A petition for rehearing calls attention to the fact that after the petition in the case was amended, as stated in the foregoing opinion, there was another amendment of it, which consisted in substituting for the word "insolvent," where it appeared in an above-mentioned averment of the petition as first amended, the words "greatly in debt." The change made by the last amendment indicates an absence of any intention to claim that Moore was, or was supposed to be, solvent when he sold to the appellee the crop on the McCrimmin land. As last amended the petition showed that the appellee's becoming responsible for the rent and its advances for making the crop were necessary to enable Moore to make it, because he was then greatly indebted and had no personal credit, and all the material he then had, including his interest in a crop on another tract of land, was under mortgage to another creditor. It well may

be inferred, from the averments of the petition as last amended, that Moore's lack of credit, and his inability to get land to make a crop on without another standing for the rent, or to make a crop without obtaining advances secured by the crop to be grown, were due to his insolvency, and that he was insolvent from the time the land was rented until he went into bankruptcy, a few weeks after making the sale sought to be enforced in this suit. There is nothing to indicate that his financial condition changed from solvency to insolvency between the date of the alleged sale and the filing of the petition in bankruptcy. But, whether the petition as last amended is or is not to be regarded as showing that Moore was insolvent when he made the alleged sale, the evidence in the case shows that he was then insolvent. The transaction in question was between a creditor and a known insolvent debtor, by which the former got for its debt the latter's growing crop and his services in supervising it until it matured and was harvested. It was not alleged or proved that what the creditor parted with was even approximately equivalent in value to what it acquired from the debtor, even if the services rendered by the latter were left out of the account.

It is a fraud on a known insolvent debtor's other creditors for one creditor to get in satisfaction of his demand property of the debtor worth substantially more than the amount of the debt for which such property is given. The validity of such a transaction is dependent upon the creditor so acquiring the debtor's property paying or allowing an adequate price or fair value therefor. It being disclosed that the transaction sought to be enforced against the seller's other creditors was a sale to a creditor by a known insolvent debtor, it was incumbent on the party claiming under such sale to show that the satisfaction of the debt, which was the consideration for the sale, was a fair price for what the buyer gave for it. That the creditor, in acquiring the known insolvent debtor's property, went beyond the permissible purpose of obtaining satisfaction of the debt owing is disclosed by a comparison of the amount realized from the property so acquired with the aggregate of the items of its cost to the creditor. The cost to the creditor is shown by the following statement:

Balance of old debt owing December 31, 1905......................$ 5,426.43
Six per cent. interest on same for six months.....................    162.79
Amount of advances on crop.......................................  1,139.80
Expenses of harvesting and marketing crop........................  2,814.19
Amount paid for rent of land.....................................    813.00

    Total ......................................................$10,356.21

The crop which, according to the pleadings and evidence in the case, cost the creditor $10,356.21, was sold for $11,651.35. If the transaction had been acquiesced in by those adversely affected by it, it would have resulted in enabling the favored creditor to realize $1,295.14 in excess of the debt and the outlay on the property taken in satisfaction of it, while the debtor's other property was worth greatly less than enough to pay what he owed to other creditors. To say the least,

there was a failure to show that the alleged sale to satisfy the debt owing to the preferred creditor was fair and valid as against the seller's other creditors.

The conclusion is that the petition for a rehearing should be, and it is, denied.

BATTS, Circuit Judge, did not take part in the action of the court on the petition for rehearing.