655 P.2d 798

**Evelyn Dicus TEED and Terry Gavin Teed, husband and wife, Plaintiffs-Appellees,**

**v.**

**RIDCO REALTY, INC., a corporation; William Foster and Judy Foster, husband and wife, Defendants-Appellants.**

No. 1 CA–CIV 5209.

Court of Appeals of Arizona, Division 1, Department B.

Sept. 14, 1982.

Rehearing Denied Oct. 26, 1982.

Review Denied Nov. 23, 1982.

---

Peter A. Neisser, P.C. by Peter Neisser, Phoenix, for plaintiffs-appellees.

James H. Harries and Robert H. Schlosser, Phoenix, for defendants-appellants.

## OPINION

JACOBSON, Presiding Judge.

This appeal requires the determination of whether a recorded divorce decree which contains provisions for continuing child support creates a lien on real property owned by the debtor-father for unpaid installments of child support not reduced to judgment, and whether a notice of *lis pendens* filed by a plaintiff in a foreclosure action gives notice of a cross-claim filed by a defendant in that same action.

This action was originally filed by Federal National Mortgage Association (FNMA), seeking to foreclose a mortgage on property formerly owned by Tim Dicus and Evelyn Dicus Teed. In connection with that action, FNMA filed a notice of *lis pendens.* Plaintiff-appellee, Evelyn Dicus Teed, filed a cross-claim against her former husband, Tim Dicus, seeking to foreclose alleged liens against the same property, consisting of a judgment lien for past child support obtained on October 28, 1976, and recorded on November 10, 1976, in the amount of $5,127.32, together with unpaid child support from that date to present. No *lis pendens* was filed by Teed in connection with her cross-claim.

Subsequently, FNMA's complaint was dismissed, leaving only the Teed cross-claim. On September 27, 1978, Tim Dicus quitclaimed all his interest in the subject property to appellants, Ridco Realty, Inc., and William and Judy Foster (the Fosters are the sole owners of Ridco Realty, Inc.).

On September 28, 1978, the trial court determined, under Teed's cross-claim, that Tim Dicus owed arrearage in child support previously unadjudicated, in the sum of $3,353.62, and entered judgment against Dicus for that amount. A certified copy of that judgment was recorded the same date.

This litigation then continued basically upon whether the September 28, 1978, judgment for child support arrearage in the sum of $3,353.62 was a lien upon the real property superior to Ridco's interest in that property.

On October 24, 1979, the trial court granted Teed's motion for summary judgment, finding the September 28, 1978, judgment against Dicus (together with the sum of $750 in unpaid child support payments occurring between September 28, 1978 and October 24, 1979), was a lien upon the real property superior to the interest of Ridco Realty.[1] Ridco Realty and the Fosters have appealed.

The facts in this case are not in dispute. On August 10, 1971, a decree of divorce was entered by the Superior Court of Maricopa County, dissolving the marriage of Tim Dicus and Evelyn Dicus, now Evelyn Teed. As a result of that divorce, Teed was awarded the real property which was the subject matter of this litigation and Dicus was ordered to pay child support in the sum of $125 per month for two minor daughters of the parties. Neither the ages of the children nor their birth dates are set forth in the decree of divorce. On July 13, 1976, a certified copy of the divorce decree was recorded in the office of the Maricopa County Recorder.

On March 14, 1973, Teed deeded the subject real property to her former husband and he became the sole owner of the property until his conveyance by quit claim deed to the appellant.

On October 28, 1976, Teed obtained a judgment against Dicus for unpaid child support in the sum of $5,127.32 and a certified copy of that judgment was recorded. Appellants agree that the judgment lien represented by the October 28, 1976 arrearage judgment is superior to their interest in the subject real property.

The subsequent litigation history arising from the mortgage foreclosure has previously been set forth and need not be repeated.

Before the trial court and on appeal, Teed contends that unpaid accruing child support payments became a judgment lien on the property belonging to Dicus superior in interest to that of the appellants. She further contends that in any event, the appellants had constructive notice of her claims by the *lis pendens* filed by FNMA in the foreclosure action. In addition, on appeal, Teed contends that appellants have failed to join indispensable parties to this appeal.

Appellants contend, as a matter of law, that the interest they acquired on September 27, 1978, from Tim Dicus is superior to any claims Teed may have for child support, not reduced to judgment on that date.

Teed's basic contention, with which the trial court agreed, is that the recording of the Teed-Dicus divorce decree subjected Dicus' property to a lien for any unpaid child support payment accruing under that decree.

■ As a preliminary matter, it is clear that the obtaining of a judgment for arrearage in child support payments on September 28, 1978, and the recording of the same on that date, did not place a lien on the subject property, as the judgment debtor, Tim Dicus, had conveyed all of his interest in that property to the appellants on September 27, 1978.

A.R.S. § 33–961 provides that before any judgment becomes a lien upon the real property of the judgment debtor, a certified copy of that judgment must be filed and recorded in the office of the county recorder in which the real property is situated. A.R.S. § 33–964 provides in part that:

A. . . . *from and after the recording* as provided in § 33–961, a judgment shall become a lien . . . upon all real property of the judgment debtor . . . whether the real property *is then* owned by the judgment debtor or is later acquired. (Emphasis added).

■ The judgment lien provided by A.R.S. § 33–964 is not effective as to property conveyed by the judgment debtor prior

---

1. In addition, the judgment found the property to be abandoned and set redemption rights at 30 days pursuant to A.R.S. § 12–1282. This ruling was made the subject of appellants' notice of appeal and the issue was briefed by both parties. At time of oral argument, because of post judgment payments made by appellants' Fosters, the 30 day redemption period was mooted and appellants abandoned their appeal as to this issue.

to recording. *Luhrs v. Hancock*, 181 U.S. 567, 21 S.Ct. 726, 45 L.Ed. 1005 (1901) (Appeal from Supreme Court of the Territory of Arizona).

■ Since Tim Dicus conveyed the property to appellants prior to recording the September 28, 1978 judgment, no lien on this property was affected by that recording.

■ As to whether or not the prior recording of the decree of divorce which contained the provisions for child support created a lien on the Dicus property, this issue has been settled in the case of *McClanahan v. Hawkins*, 90 Ariz. 39, 367 P.2d 196 (1961). In *McClanahan*, the Arizona Supreme Court held that the recording of a divorce decree providing for payment of installment child support payments did not create a lien upon the real property of the former spouse ordered to pay support. In so holding, the court noted:

> Not every judgment directing the payment of money can become a lien prior to the levy of an execution. In order that a judgment operate as a lien under a general judgment lien statute, it must be final and conclusive, and the amount due must be certain [citations omitted]. 90 Ariz. at 141, 376 P.2d at 197.

> \*　\*　\*　\*　\*　\*

> In the instant case when the appellant recorded the divorce decree in an attempt to place a lien upon her divorced husband's real property, the decree was not final in the sense that the alimony and support payments could still be modified or terminated. In this respect it was not within the contemplation of the general judgment lien statute. 90 Ariz. at 142, 367 P.2d at 198.

> \*　\*　\*　\*　\*　\*

> ... the general view is that the lien does not arise automatically as to each installment as it becomes due, but arises only when the court has formally determined the total amount due and has reduced the delinquent payments to judgment. 90 Ariz. at 144, 367 P.2d at 199.

Teed, while recognizing the existence of the rule stated in *McClanahan,* contends that that case has been overruled in *Jarvis v. Jarvis,* 27 Ariz.App. 266, 553 P.2d 1251 (1976).

Aside from *Jarvis* being an opinion of the Court of Appeals and the Court of Appeals being unable to overrule a Supreme Court decision, *State v. Korte,* 115 Ariz. 517, 566 P.2d 318 (App.1977), *Jarvis* is not in conflict with McClanahan.

In *Jarvis,* the trial court ordered that a judgment determining child support arrearage in the sum of $22,500 be payable at the rate of $400 per month. The former wife appealed, contending that she was entitled to a written judgment for the full amount without conditions as to payment. The Court of Appeals agreed and in doing so employed the following reasons:

> In Arizona, installments of spousal maintenance and child support become vested when they become due [citations omitted]. Each installment as it becomes due is in the nature of a final judgment conclusively establishing the rights and duties of the parties to that installment [citations omitted]. *In fact, execution may issue for the collection of past due installments without the necessity of obtaining a new judgment* [citations omitted]. (Emphasis added). 27 Ariz.App. at 267, 268, 553 P.2d at 1252, 1253.

Teed points to this reasoning and especially the emphasized portion as supporting her position that the installments for child support falling due under the recorded divorce decree become a judgment lien on the property. We disagree. *McClanahan* itself discusses the vested nature of past due child support payments, but nevertheless concludes that simply because these installments are final and conclusive between the parties does not make them liens under the general judgment lien statute. Moreover, the fact that execution may issue for past installments without the necessity of a new judgment is not inconsistent, but is completely consistent with the *McClanahan* holding that "not every judgment directing the payment of money can become a lien

*prior to the levy of execution."* It is the levying of execution which gives rise to a lien, not the fact that execution in the first instance may issue. If in connection with her cross-claim, Teed had caused execution to issue and be levied against the subject real property, the results she urges might be forthcoming. However, no execution was issued or levied. Under the express ruling of *McClanahan,* no lien arose against Dicus real property simply because of the prior recording of a divorce decree providing for installment payments of child support.

Teed next contends that the recording of a *lis pendens* by FNMA in the foreclosure action gave the appellants constructive notice of her cross-claim against Dicus.

A.R.S. § 12–1191 provides, in part, that:

A. In *an action affecting title to real property,* plaintiff at the time of filing the complaint, or thereafter, *and defendant* at the time of filing his pleading when affirmative relief is claimed in such pleading, or thereafter, may file in the office of the recorder of the county in which the property is situated a notice of the *pendency of the action or defense* .... (Emphasis added).

■ Under this statute, Teed's contention must fail for two reasons. First, since we have held that the recording of the divorce decree does not give rise to a lien for child support payments due under that decree, the action of Teed against Dicus for past child support is not an action affecting the title to real property. Any judgment obtained against Dicus in that action is personal and could be satisfied out of any property owned by Dicus, real or personal. Other states are in accord that the doctrine of *lis pendens* (giving constructive notice of claims against specific property) has no application in an action for the recovery of a personal money judgment only which will not affect the title to real property. *Cutter v. Cutter Realty Co.,* 265 N.C. 664, 144 S.E.2d 882 (1965); *Rehnberg v. Minnesota Homes,* 236 Minn. 230, 52 N.W.2d 454 (1952); *Flanagan v. Clark,* 156 Okl. 230, 11 P.2d 176 (1932).

Therefore, the filing of *lis pendens* in the FNMA action would not give constructive notice of personal money judgment claims, the satisfaction of which would not affect title to real property made in that action.

Second, and more importantly, Arizona's *lis pendens* statute provides that both the plaintiff and the defendant claiming an affirmative relief may record *lis pendens.* Our statute was adopted from California and therefore California rulings on its *lis pendens* legislation are persuasive. *Mileham v. Arizona Board of Pardons and Paroles,* 110 Ariz. 470, 520 P.2d 840 (1974). In *Orekar v. Lager,* 122 Cal.App. 370, 10 P.2d 178 (1932), the California court held that where defendants asserted a cross-claim for affirmative relief but filed no *lis pendens,* such defendants were not entitled to rely upon a *lis pendens* filed by the plaintiff in the same action. In so holding, the court noted:

The cross-complainants ... admittedly and obviously failed to comply with the provisions of the statute in neglecting to file a lis pendens when their cross-complaint was filed at or anytime afterwards. They argue that when appellant or his grantors saw the record of the lis pendens filed by the *plaintiff* in the action, he was thereby charged with notice of the allegations of all pleadings on file in said action including the cross-complaint. To adopt such a rule would abrogate the express provisions of the Code section. If the Legislature had in mind such result, why did it provide for a lis pendens for *both* the complaint of the plaintiff and the affirmative relief of the defendant? Can we assume that they meant what they said in one case, and made an idle gesture in the other? If no lis pendens is filed by the plaintiff, there is no constructive notice of the pendency of the action, and purchasers and encumbrancers without actual notice take title free and clear of any rights asserted in the action and any subsequent judgment rendered therein. Where a defendant in his answer sets up an affirmative defense based upon an absolutely different cause of action, the

same rule is laid down by the statute. 10 P.2d at 179. (Emphasis in original).

We therefore hold that the filing of a *lis pendens* by FNMA in its foreclosure action did not give constructive notice of Teed's cross-claim.

Finally, Teed argues that the appeal must be dismissed because the appellants failed to join indispensable parties. Parties alleged to be indispensable consist of various lienholders whose interest appears of record prior to September 27, 1978, the date appellant acquired title. This argument is premised upon the assumption that to grant appellants' relief in this appeal would "rearrange the order of liens, priorities and redemptions of the parties without giving all of the interested parties an opportunity to be heard." (Appellees' Answering Brief).

■ We disagree. The only portion of the judgment sought to be reviewed is the priority of Teed's claim for child support adjudicated after appellants acquired title. The determination of this issue does not affect, nor can it affect, rights of other parties to this litigation whatever those rights may be. There has been no failure to join indispensable parties.

The judgment of the trial court is reversed and the matter remanded with directions to enter judgment in favor of the appellants in accordance with the dictates of this opinion.

GRANT, J., and RICHARD M. DAVIS, Judge Pro Tem., concur.

*Note*: The Honorable Richard M. Davis, a Judge *pro tempore* of a court of record, has been authorized to participate in this matter by the Chief Justice of the Arizona Supreme Court, pursuant to Arizona Const. art. VI, § 20.