**Petitioner: Lexie–Leigh SHEPLER and Scott Thornock,**

v.

**Respondent: Michael WHALEN.**

No. 04SC553.

Supreme Court of Colorado, En Banc.

Sept. 12, 2005.

---

Donald D. Vogt, LLC, Donald D. Vogt, Morrison, for Petitioner Lexie–Leigh Shepler.

James K. Kreutz & Associates, P.C., James K. Kreutz, Greenwood Village, for Petitioner Scott Thornock.

Kloepfer & Gorrell, P.C., Teryl R. Gorrell, Denver, for Respondent.

Justice KOURLIS dissents, and Justice COATS joins in the dissent.

MULLARKEY, Chief Justice.

## I. Introduction

In this dispute among judgment creditors, we examine the creditors' priority to real property that was never titled in the name of the judgment debtor. We determine that the state's race-notice statute does not control the priority among creditors under the facts of this case. Where the judgment debtor had neither a legal nor an equitable interest in the property, recording a judgment does not create a lien on the property because there is no interest on which the lien could attach. Where it is alleged that property titled in the name of another has been fraudulently conveyed by the judgment debtor, the creditor must file an action to uncover the fraud. Such an action, along with a notice of lis pendens, does establish the creditor's lien on the fraudulently conveyed prop-

erty. Accordingly, a junior creditor who successfully exposes a fraudulent transfer by filing suit takes priority over senior creditors holding judgments recorded prior to the junior creditor uncovering the fraud. The court of appeals' judgment is affirmed. *See Whalen v. Shepler,* 104 P.3d 243 (Colo.App.2004).

## II. Facts and Prior Proceedings

Both the petitioners, Lexie–Leigh Shepler and Scott Thornock, and the respondent, Michael Whalen, are creditors of Sanford Altberger and Orovi, Inc.[1] The creditors recorded judgments against Altberger and Orovi in the following order: Rodney Lamb, Shepler, Thornock and Whalen. The earliest judgment was recorded on November 27, 2000.

Through discovery, Whalen learned that the townhouse where Altberger and his wife, Judith Altberger, lived had been purchased with a loan from P.C. Financial. From the time of its purchase, the townhouse had always been titled solely in Judith Altberger's name. In 1998, before any of the judgments were recorded, Altberger transferred $353,000 from Orovi to P.C. Financial, to pay off the mortgage. At the time Altberger made the transfer, he and Orovi owed money to numerous creditors, including the parties to this action.[2]

After learning of the transactions, Whalen filed a "motion for declaration of equitable lien or constructive trust and for the issuance of a writ of execution on the 'Judith Altberger residence'" as well as a notice of lis pendens concerning the property. In his motion, Whalen asserted that Altberger had fraudulently caused Orovi to pay off the townhouse mortgage in order to defraud their creditors. Upon learning of Whalen's action, Shepler, Thornock and Lamb made a joint motion to intervene, which was granted.

Following a hearing, the trial court found that the transfer of funds from Orovi to P.C. Financial was "fraudulent and done with the intent to hinder, delay or defraud creditors of the debtor, Sanford Altberger and/or Orovi,

Inc." Subsequently, the court imposed a constructive trust on the residence and established an equitable lien in favor of Altberger's creditors. Although the written order stated that the lien was established in favor of Whalen, the court clarified at the hearing that it was naming Whalen because he was the party making the motion, and the trust was created for the benefit of all creditors. The trial court expressly reserved the issue of priority for later determination.

After a hearing on priority, the trial court was persuaded that Altberger "had 'an interest' in the subject residence at the time the Intervenors' [Shepler, Thornock and Lamb's] judgment liens were filed," and the imposition of the constructive trust "only identified or exposed an already existing interest." The court provided no explanation as to the nature of that interest. Because all of the creditors had recorded judgments, the court concluded that liens against the Altberger residence "shall be established as set forth in C.R.S.1973 § 13–52–102 and statutory scheme for enforcement of such liens." The court's ruling set priority of the liens in the order that the judgments were recorded, making Whalen's judgment the last to be satisfied. Whalen appealed.

The court of appeals reversed the trial court, finding that Whalen should be given priority over Shepler, Thornock and Lamb. Discerning "no basis on which intervenors' judgment liens could attach to the townhouse," the court rejected the argument that Colorado's race-notice statute should be applied to establish priority in the order the judgments were recorded. *Whalen v. Shepler,* 104 P.3d at 246. Rather, the court determined that "when a junior judgment creditor obtains the debtor's equitable interest in real property, through an equitable action in the nature of a creditor's bill, senior judgment liens do not attach," and the creditor who brought the action has priority. *Id.*

---

1. Rodney Lamb was initially also one of the petitioners in this case, and took the same position as Shepler and Thornock at the trial court and court of appeals. While this action was pending, Whalen acquired Lamb's judgment by assignment, and consequently Lamb has been dismissed from the case.

2. The relevant judgments were recorded and the relevant actions were filed against both Altberger and Orovi, Inc. Orovi is a corporation of which Altberger is president and sole owner. For ease of reference, we will use only Altberger's name throughout the remainder of this opinion.

Shepler, Thornock and Lamb petitioned this court for certiorari review of the court of appeals' opinion.[3] Lamb was subsequently dismissed from the action. We uphold the decision of the court of appeals for reasons similar to those that court espoused.

## III. Analysis

Section 13–52–102, C.R.S. (2004), provides a means for creditors to collect debts owed to them. After a creditor has obtained a judgment against a debtor, the statute allows "[a]ll goods and chattels, lands, tenements, and real estate of every person against whom any judgment is obtained in any court of record in this state, either at law or in equity," to be sold in satisfaction of that judgment. § 13–52–102(1). By filing the judgment against the debtor in the appropriate county clerk and recorder's office, the creditor obtains a lien on the debtor's property. *Id.* A lien attaches to all real estate owned by the debtor at the time the judgment is recorded, as well as any real estate that the debtor may later acquire prior to the lien's expiration. *Id.; Sky Harbor, Inc. v. Jenner,* 164 Colo. 470, 435 P.2d 894 (1968). A lien may attach to any interest the judgment debtor has in land, whether legal or equitable. § 13–52–105, C.R.S. (2004); *Fallon v. Worthington,* 13 Colo. 559, 22 P. 960 (1889).

Colorado is a race-notice jurisdiction, meaning that, once a debtor's real property has been sold, creditors' judgments are satisfied out of the proceeds of the sale in the order that their judgments were recorded in the county clerk and recorder's office. § 38–35–109, C.R.S. (2004). The race-notice statute describes the types of instruments that may be recorded and states:

No such unrecorded instrument or document shall be valid against any person with any kind of rights in or to such real property who first records and those holding rights under such person, except between the parties thereto and against those hav-

ing notice thereof prior to the acquisition of such rights.

*Id.* This provision guarantees that the creditor who first recorded a judgment against a debtor is the first to have his or her debt satisfied. The race-notice statute can come into operation only when the debtor has an interest in a particular property to which the creditor's judgment can attach. *See* § 13–52–105; A.C. Freeman, A Treatise of the Law of Judgments § 949, at 1992 (5th ed. 1925) ("Judgment liens attach to the whole substantial interest of judgment debtors; but if they have no such interest ... these liens do not attach at all.").

Shepler and Thornock contend that the race-notice statute should control the order in which the creditors share the proceeds of the sale of the townhouse, respectively giving them second and third priority. We reject this contention as contrary to the race-notice statute. Because the judgment debtor Altberger did not have any recognizable interest in the townhouse prior to the trial court's imposition of a constructive trust, the race-notice statute does not give priority to judgment creditors Shepler and Thornock. The judgments recorded by Shepler and Thornock in late 2000 could attach only to property in which Altberger had an interest, and therefore have no bearing on the priority of creditors with respect to the townhouse. *See Luhrs v. Hancock,* 181 U.S. 567, 573–74, 21 S.Ct. 726, 45 L.Ed. 1005 (1901); Freeman, *supra,* § 949, at 1991 ("Whenever a lien attaches to any parcel of property, it becomes a charge upon the precise interest which the judgment debtor has, and no other.").

The fraudulent transfer at issue in this case is not the purchase or conveyance of the townhouse. Rather, it is the fraudulent transfer of funds to pay off the mortgage on the house, thereby giving Judith Altberger an unencumbered interest in the property. Because the townhouse was always solely titled in Judith Alberger's name, Altberger

---

**3.** We granted certiorari on the following questions:

1. Whether a judgment debtor that fraudulently pays off a promissory note encumbering real property titled in the debtor's spouse holds an equitable interest to which creditor's recorded transcripts of judgment may attach.

2. Whether a junior judgment creditor is entitled to priority over senior judgment creditors where the junior judgment creditor first obtained an equitable lien against real property titled in a third person but tainted by a judgment debtor's fraud.

never had any legal interest in the property. Nor did he have an equitable interest. The only "interest" Altberger could be said to have in the townhouse arose through the fraudulent payment of the mortgage balance. An equitable interest in the townhouse cannot arise solely from Altberger's perpetration of fraud. *See generally* Dan B. Dobbs, 1 Law of Remedies § 2.4(2) (2d ed.1993) (discussing the maxim of equity "one who comes into equity must come with clean hands").

Furthermore, although section 38-10-117, C.R.S. (2004), provides that conveyances made with the intent to hinder, delay, or defraud creditors "shall be void," the statute has been interpreted to mean that the conveyance is *voidable* rather than void. *Sec. Serv., Ltd. v. Equity Mgmt., Inc.*, 851 P.2d 921, 924 (Colo.App.1993); *Doster v. Manistee Nat'l Bank*, 67 Ark. 325, 55 S.W. 137, 138 (1900). As between the grantor and the grantee, a fraudulent conveyance is valid "until some action is taken to uncover the fatal flaw in the transaction." *Sec. Serv.*, 851 P.2d at 924. Consequently, the fraudulent transfer of funds from Altberger to the lender on behalf of his wife, the borrower, was presumptively valid until Whalen brought the action to uncover the fraud. At the time Shepler and Thornock recorded their judgments, the transfer was considered complete, leaving Judith Altberger with an unencumbered interest in the property and Altberger without any interest. Because the debtor retains no interest, "a recorded transcript of judgment does not automatically create a lien upon property which a judgment debtor has allegedly fraudulently conveyed to a third party." *Id.* at 923. Before the judgment can attach, the "creditor must successfully prosecute a fraudulent conveyance lawsuit." *Id.;* *see also* Freeman, *supra*, § 954, at 2006 ("One who has obtained judgment, and has not by levy or otherwise taken any further steps to obtain satisfaction out of property fraudulently transferred, has no lien thereon, for the reason that the debtor has no legal or equitable interest in the property.").

Accordingly, the judgments initially recorded by Shepler, Thornock, Whalen and Lamb did not attach to the townhouse. Because none of the creditors who is a party to this action had a recorded judgment capable of establishing a lien on the townhouse, those judgments and the race-notice statute do not apply to the issue of priority in this instance.

The Arkansas Supreme Court faced a similar situation and reached a similar conclusion more than one hundred years ago in *Doster*, 55 S.W. at 138. In *Doster*, the senior judgment creditor sought reversal of a chancery court's ruling that the junior judgment creditor was entitled to the proceeds of the sale of land fraudulently transferred by the debtor prior to either creditor recording a judgment. Doster argued that he was entitled to first satisfaction of his judgment by virtue of the fact that he recorded the first judgment. The Arkansas court rejected Doster's argument, determining that "there is no statutory judgment lien on lands which have been fraudulently conveyed before the rendition of judgment, the debtor no longer owning or being possessed of [seized] of such property, either in law or equity." *Id.* at 139. Because the debtor retained no interest in lands he fraudulently conveyed, the court found that Doster's judgment could not function as a lien on those lands. The court awarded the proceeds of the sale of the land to the junior judgment creditor who had filed suit to uncover the fraudulent conveyance. *Id.* at 142. The court concluded that the proper remedy in cases of a debtor's fraudulent conveyances prior to judgment "is to go into equity to uncover such conveyances, and that the creditor who exercises superior diligence in that regard by first bringing his suit and proceeding to uncover such assets is entitled to the proceeds." *Id.* We apply similar logic to the present case.

Shepler and Thornock, however, argue that Altberger essentially purchased and paid for the townhouse, but caused title to be conveyed to his wife, and Altberger therefore can be considered the equitable and beneficial owner of the townhouse. Based on their version of the facts, Shepler and Thornock argue that a trust results in Altberger's favor. *See Cortez Land & Sec. Co. v. Stabler*, 84 Colo. 64, 65, 268 P. 526, 526 (1928) ("Where one purchases and pays for real property, causing title to be conveyed to another without consideration, a trust results in favor of him who paid for the property."). They contend that "the trial court found that

Altberger retained beneficial use of the property transferred by granting Whalen's motion." As we will demonstrate, Shepler and Thornock's argument, that Altberger had an equitable interest in the property to which their judgments could attach, is premised upon a misunderstanding of the difference between resulting trusts and constructive trusts, as well as a misinterpretation of the facts of the case. Both resulting and constructive trusts are implied trusts, where the intent of the parties to form a trust is not apparent. George Gleason Bogert & George Taylor Bogert, Trusts & Trustees § 451, at 225 (2d ed. rev.1991). Resulting trusts can loosely be classified as "intent-enforcing" trusts, where "the settlor has expressed no intent by words, but in which he has done acts other than talking or writing from which the court finds an intent that a trust arise." *Id.* at 226.

By contrast, constructive trusts are "fraud-rectifying" trusts in which the court does not "infer or presume that any such intent [to have a trust] existed, but the court uses trust terminology as the most convenient method for working out justice and preventing one party from unjustly enriching himself at the expense of the other." *Id.* Bogert notes that errors are sometimes made "classifying some trusts which are founded on positive wrongdoing as 'resulting.'" *Id.* at 228. In his treatise, he endeavors

> to place in the constructive trust class all trusts which are based on breach of contractual or fiduciary obligation, fraud, or other wrongdoing, and to leave in the resulting trust class only those where the trust is established upon a basis of actual or presumed intent of the settlor.

*Id.* at 229. In short, resulting trusts arise from bona fide transactions, while constructive trusts are imposed in cases of fraudulent transfers.

We examined the differences between a resulting and constructive trust in *Page v. Clark*, 197 Colo. 306, 592 P.2d 792 (1979). We summarized three situations where a resulting trust is properly found:

> "(1) where an express trust fails in whole or in part; (2) where an express trust is fully performed without exhausting the trust estate; (3) where property is pur-

chased and the purchase price is paid by one person and at his direction the vendor conveys the property to another person." *Id.* at 314–15, 592 P.2d at 797 (quoting Scott on Trusts § 404.1 (3d ed.1967)). In those situations, the court's finding of a resulting trust recognizes that the beneficial interest in the property lies in someone (e.g., the debtor) other than the person taking title, and the trust is enforced to reflect that interest. *Id.* at 315, 592 P.2d at 797. Constructive trusts, on the other hand, can only be enforced in favor of creditors. *Barnes v. Beighly*, 9 Colo. 475, 479, 12 P. 906, 908 (1887). In other words, imposition of a resulting trust on Altberger would recognize that the intent of Altberger and his wife was for Altberger to have a beneficial interest in the property. Imposing a constructive trust acknowledges that Altberger did not have an interest in the property, but because of the fraud, his wife will be considered to hold the property in trust for his creditors. *See generally*, Bogert, *supra*, §§ 451, 475.

A resulting trust could not have been created here. As Bogert notes in his treatise:

> If one pays off a mortgage on land already owned by another ... he has not paid the purchase price of the land in the sense of the resulting trust rule. He has merely removed a lien or encumbrance from another's realty. If he desires a trust interest in that realty ... he should expressly stipulate for it and get a written declaration of trust. The law does not imply such a security interest by way of resulting trust for him.

Bogert, *supra*, § 455 at 282–83. Moreover, a trust was imposed in the present case because of the fraudulent transfer, not because Altberger and his wife intended Altberger to retain an interest in the townhouse. The transfer at issue is unlike the classic resulting trust situation where one person pays for property while directing title in another. *See Valley State Bank v. Dean*, 97 Colo. 151, 154, 47 P.2d 924, 926 (1935). Here, Judith Altberger initially purchased the property, and subsequently, Altberger paid off the mortgage interest using money he owed to creditors, with the intention of defrauding those creditors. Imposition of a constructive trust

on the property was proper because " 'though acquired originally without fraud, it is against equity that it should be retained by him who holds it.' " *Page*, 197 Colo. at 315, 592 P.2d at 798 (quoting *Botkin v. Pyle*, 91 Colo. 221, 14 P.2d 187 (1932)).

Having concluded that the race-notice statute cannot be used to determine the priority of creditors in this instance because Altberger did not have a legal or equitable interest in the townhouse, we must now decide the proper way to set priority. We hold that Whalen takes first priority because he first established a lien that attached to the property by bringing the action to uncover the fraud and impose the constructive trust.

Long ago, in *Shuck v. Quackenbush*, 75 Colo. 592, 601, 227 P. 1041, 1045 (1924), we held that where a creditor had filed a complaint or service of summons in a civil action, "[b]y filing at the same time notice of lis pendens, there was created a lien which attached [to the property] at the time the notice was filed." The Colorado Court of Appeals applied this principle decades later to conclude that a fraudulent conveyance claim and notice of lis pendens established an equitable interest in property that took first priority in the proceeds of the sale of the property. *Emarine v. Haley*, 892 P.2d 343, 348–49 (Colo.App.1994). As previously noted, "the judgment creditor must successfully prosecute a fraudulent conveyance lawsuit before [his or her] recorded transcript of judgment attaches as a valid lien against the property." *Sec. Serv.*, 851 P.2d at 923.

Whalen was the only creditor to file suit pertaining to the townhouse property, and the lien established by Whalen's suit dates back to the filing of his complaint and lis pendens. Shepler, Thornock and Lamb did not intervene until after the initial filing, and consequently they did not become lienholders until after Whalen. The principle that the creditor who first brings suit to uncover fraud takes priority has long been recognized by commentators in this area. Freeman observed that "the creditor who first proceeds in equity to reach property fraudulently transferred thereby obtains a right to priority to which the claims of other judgment creditors, whether prior or subsequent, must

yield precedence." *Freeman*, *supra*, § 954, at 2007.

We find this rule to work the most just result because it rewards the creditor who put forth the most effort. Granting first priority to the creditor bringing suit is consistent with the maxim that "the law favors diligent creditors." *Id.* § 982, at 2069. To hold to the contrary would allow creditors to "lie idle until others have by their superior diligence discovered the fraud and commenced proceedings in equity to thwart it by obtaining the cancellation of the conveyance, and then step forward and reap the first fruits of their diligence." *Id.* § 954, at 2007.

As the creditor who brought suit, Whalen may first satisfy his judgment from the proceeds of the sale of the townhouse. The remaining creditors, Shepler, Thornock and Lamb all intervened in Whalen's action at the same time. Consequently, they each established a lien capable of attachment to the townhouse at the same time. Liens established at the same time are accorded equivalent priority, and Shepler, Thornock and Lamb must share equally after Whalen has satisfied his judgment. *See Id.* § 975, at 2054 ("[T]hose [liens] taking effect simultaneously would have no priority over each other except such as might be gained by prior diligence in subjecting property by appropriate proceedings.").

## IV. Conclusion

Because neither Altberger nor Orovi, Inc., had an interest in the townhouse, none of the creditors' liens attached to the townhouse as a result of recording their judgments against the debtors. Consequently, the race-notice statute does not apply. A lien on the property was not established until Whalen filed his lis pendens and prevailed in his action for imposition of a constructive trust. Having established the fraud and obtained the first lien on the property, Whalen holds first priority. Accordingly, we affirm the judgment of the court of appeals.

Justice KOURLIS dissents, and Justice COATS joins in the dissent.

Justice KOURLIS dissenting.

This is a case in which application of Colorado's race-notice statute would dictate re-

versal of the court of appeals' judgment. The majority has concluded, instead, that because the Respondent, Whalen, uncovered a fraudulent transaction and caused the trial court to impose a constructive trust upon that property, such trust should inure to his benefit without reference to the seniority of judgment liens filed against all property owned by the debtor. It is my view that Whalen is not entitled to any super-priority in his lien merely because he was the one who exposed the fraud. Rather, I agree with the trial court that the priority of recorded liens would apply. I would therefore reverse the court of appeals, and respectfully dissent from the majority opinion.

## I.  Introduction

The parties to this case all have judgments against Sanford Altberger and his company, Orovi, Inc. Colorado allows judgment creditors to file judgment liens against all property owned by the debtor, and then to collect the judgments against that property. When there are multiple creditors who file multiple liens, the liens are satisfied in order of filing.

The Petitioners, Lexie–Leigh Shepler and Scott Thornock, obtained their judgments and filed their judgment liens well in advance of Whalen's filing of his lien. Colorado's statute, section 13–52–105, C.R.S. (2004) would dictate that the Shepler/Thornock liens would be satisfied first—before the Whalen lien.

After the filing of all liens, Whalen discovered that Altberger had caused his company to pay off the mortgage on a townhouse titled to Altberger's wife in the amount of $353,000. Whalen filed a court action seeking a declaration of equitable lien or constructive trust, and seeking to collect against that townhouse, on the basis that the transaction was fraudulent and undertaken in order to hinder, delay or defraud creditors. Whalen also filed a lis pendens against the townhouse. The trial court ultimately granted Whalen's prayer for relief and entered an order imposing a constructive trust and an equitable lien on the townhouse on December 18, 2002. However, the trial court enforced the order of priority established by the filing of liens against Altberger and Orovi, and declared Whalen's lien junior to Shepler's and Thornock's.

The court of appeals reversed.

The question before this court is whether Whalen is entitled to some super-priority because he was the one who uncovered the fraudulent transaction, and I would conclude that he is not.

## II.  The Effect of the Lis Pendens and Equitable Lien

At the time the various liens were recorded, Altberger did not have a legal interest in the townhouse. A recorded transcript of judgment does not automatically create a lien upon fraudulently conveyed property. *Sec. Servs., Ltd. v. Equity Mgmt., Inc.*, 851 P.2d 921, 924 (Colo.App.1993). Rather, the judgment creditor must "successfully prosecute a fraudulent conveyance lawsuit" before the lien may attach. *Id.*

Usually, the remedy for such an action is to return the property to its prior status of ownership, thereby exposing it to the collection efforts of the creditor. *Emarine v. Haley*, 892 P.2d 343, 346 (Colo.App.1994). Here, there is no prayer for that relief, presumably because the mortgagee received the funds without any notice of the fraud. Hence, the only remedy is to seek imposition of an equitable lien on the home and execute against that lien.

Whether or not Altberger held an equitable interest in the townhouse as of the date he paid the mortgage, in my view, is not the dispositive issue. Rather, the constructive trust imposed by the trial court must inure to the benefit of all creditors in their order of priority—even if it arose after the filing of all liens.

In the case of *In re Leonard*, 125 F.3d 543 (7th Cir.1997), the Seventh Circuit Court of Appeals concluded that neither the filing of a fraudulent conveyance lawsuit, nor the filing of a lis pendens, cause a creditor to achieve priority over other judgment creditors who had priority liens. In that case, the court was dealing with Illinois state law within the context of a bankruptcy proceeding. Certain creditors who located and exposed a fraudulent conveyance and filed an associated lis pendens were claiming that they were entitled to execute against that property free of

the interests of other creditors. The court concluded otherwise, reasoning that the Illinois lis pendens statute does not give the filer a lien against the property because the filing requires neither the title holder's consent nor judicial intervention. Rather, the lis pendens merely notifies other parties of an adverse claim to the party. Similarly, the court determined that the mere uncovering of a fraudulent transaction did not create any priority interest in that asset. 125 F.3d at 545.

So too, Colorado's lis pendens statute creates no lien in the property. Rather, the filing of a lis pendens "shall be notice to any person thereafter acquiring, by, through, or under any party named in such notice, an interest in the real property described in the notice in the county or counties where recorded that the interest so acquired may be affected by the action described in the notice." § 38–35–110(1), C.R.S. (2004).

Hence, the lis pendens itself created no priority. The only basis upon which priority could attach is that Whalen "successfully exposed a fraudulent transaction by filing suit." Maj. op. at page 1086. This argument does not withstand scrutiny.

Judgment liens apply not only to property owned by the debtor at the time of the lien, but also to property thereafter acquired. *See* § 13–52–102(1), C.R.S. (2004). If Altberger or Orovi had acquired a townhouse on December 18, 2002, that townhouse would be subject to the judgment liens then of record in the order in which filed. The judicial recognition of a constructive trust should be treated no differently.

Indeed, in circumstances where the equities are much more compelling, courts have enforced the priority of judgment liens. For example, in *Sky Harbor, Inc. v. Jenner*, 164 Colo. 470, 435 P.2d 894 (1968), this court concluded that a judgment lien took priority over a grantee to the property who had acquired the deed prior to the recording of the liens, but who had not recorded it. Citing earlier authorities, the court noted that, "[n]o resulting trust nor unrecorded deed can operate to defeat the right of a judgment creditor who has caused his judgment to become a lien by proper record, unless the creditor had notice of the trust or unrecorded

deed at the time his lien attached." *Id.* at 475–76, 435 P.2d at 897.

In *Shearton Serv. Corp. v. Johnson*, 5 P.3d 395 (Colo.App.2000), the court of appeals held that a judgment lien creditor's interest had priority over an unrecorded, equitable interest inuring to the benefit of the debtor's wife. The court held that "if a judgment lien creditor perfects a lien on real property, before a debtor's spouse asserts and perfects his or her claim to the property in a dissolution proceeding, then the weight of authority holds that the rights of the debtor's spouse to the property are subordinate to those of the judgment lien creditor." 5 P.3d at 397.

In short, Whalen can neither assert that the equitable lien inures solely to his benefit in contravention of the judgment creditor's lien rights, nor can he assert that the constructive trust creates new property not subject to the previous liens.

### III. Conclusion

The only policy argument that Whalen makes is that enforcement of the priority system creates a disincentive for junior creditors to uncover fraudulent conveyances, because they may not benefit from the proceeds since the senior rights must first be satisfied. The incentive that Whalen would prefer is one that rewards secrecy and encourages creditors to act unilaterally.

I would enforce the priority system of our judgment lien statute. There is no factual argument or legal precedent supporting the creation of a super-lien for the benefit of Whalen merely because he was the one to file the action that exposed the townhouse transfer.

Accordingly, I would reverse the court of appeals and reinstate the judgment of the trial court and I, therefore, dissent.