**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 5, 2013**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

In re: GARY LEE BRYAN,

    Debtor,

--------------------------

ARTHUR CLARK,

    Defendant - Appellant,

v.

M. STEPHEN PETERS, Chapter 7
Trustee,

    Plaintiff - Appellee,

JANEL K. BRYAN; AURORA LOAN
SERVICES, LLC,

    Defendants - Appellees.

No. 12-1485
(D.C. No. 1:12-CV-00746-WJM)
(D. Colo.)

---

**ORDER AND JUDGMENT**[*]

---

Before **KELLY**, **LUCERO**, and **MATHESON**, Circuit Judges.

---

This bankruptcy appeal involves claims to approximately $851,000 in real

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

property sale proceeds received by Plaintiff-Appellee Chapter 7 Trustee M. Stephen Peters. Competing claimants include: (1) Defendant-Appellee Janel K. Bryan, the spouse of the debtor (Gary L. Bryan) in the underlying Chapter 7 proceeding, (2) Defendant-Appellee Aurora Loan Services, LLC ("Aurora"), (3) Specialized Loan Servicing, LLC ("Specialized"), and (4) Defendant-Appellant Arthur Clark. The district court affirmed the bankruptcy court's holding that Mr. Clark did not perfect a judgment lien against the underlying real property ("property") and therefore was not entitled to any proceeds from its sale. Clark v. Peters (In re Bryan), 483 B.R. 738, 742 (D. Colo. 2012); Peters v. Bryan (In re Bryan), 469 B.R. 341, 352-53 (Bankr. D. Colo. 2012). Our jurisdiction arises under 28 U.S.C. § 158(d)(1), and we affirm in part, reverse in part, and remand.

Background

In 1999, Mrs. Bryan and debtor Mr. Bryan formed the Bryan Family Trust, in which they were beneficiaries along with their two children. Aplt. App. 32, 64. In 2000, the Bryans purchased the property, and in 2001, the Bryans transferred the property to the Trust after taking out a $203,000 loan from Washington Mutual Bank against it. Aplt. App. 32.

In 2002, Mr. Clark filed a lawsuit against Mr. Bryan and, on June 1, 2004, Mr. Clark was awarded a judgment against him for $211,000. Aplt. App. 33, 42-47. Shortly thereafter, on July 15, 2004, Mr. Clark recorded a transcript of

- 2 -

judgment against Mr. Bryan in Jefferson County, where the property is located, as permitted by Colorado law. See Colo. Rev. Stat. § 13-52-102 (2002). Aplt. App. 33. At the time of Mr. Clark's recording, the property was titled in the name of the Trust. Aplt. App. 33.

Between the time Mr. Clark filed his lawsuit in 2002 and recorded the transcript of judgment in 2004, two transfers of the property occurred. First, on February 21, 2003, the Trust transferred the property back to Mr. and Mrs. Bryan, who then used it to refinance their loan with Washington Mutual Bank for $250,000, after which they transferred the property back to the Trust. Aplt. App. 32. Second, on June 16, 2003, the Trust took out a $250,000 loan against the property from Vectra Bank. Aplt. App. 32, 34.

After Mr. Clark recorded his judgment lien in 2004, two additional transfers occurred. First, on January 25, 2005, the Trust transferred the property to Mrs. Bryan alone, who, six days later, took out another loan against it with Vectra, this time for $560,000; a loan now held by Aurora. Also on January 31, 2005, Mrs. Bryan executed a deed of trust joined by Mr. Bryan securing the Vectra loan and then transferred the property back to the Trust. Aplt. App. 33-34. Vectra (now Aurora) recorded its deed of trust on February 7, 2005, Aplt. App. 33, and the Bryans used most of the $560,000 to satisfy their two earlier loans with Washington Mutual. Aplt. App. 33. Second, on May 9, 2005, the Trust quitclaimed the property to Mr. and Mrs. Bryan, who recorded the deed on May

19, 2005.  Aplt. App. 34; Aplee. Bryan Supp. App. 61.  Also on May 9, 2005, the Bryans used the property to secure a home equity line of credit ("HELOC") with Vectra for $55,000; a loan now held by Specialized.[1]  Aplt. App. 34.  Nothing in the appendices before us indicates when Specialized recorded.

In October 2005, Mr. Bryan filed for bankruptcy protection under Chapter 13 of the Bankruptcy Code, and, in November 2006, his case was converted to a Chapter 7 case.  Aplt. App. 17.  Three adversary bankruptcy proceedings soon followed.  The first, brought by Mr. Clark, resulted in Mr. Bryan waiving a discharge.  Aplt. App. 6.   The second, brought by the Trustee, resulted in a determination that the Trust was a sham.  Aplt. App. 6; see Peters v. Bryan (In re Bryan), No. 09-cv-1366, 2010 WL 3894035 (D. Colo. Sept. 29, 2010), aff'd, 495 F. App'x 884 (10th Cir. 2012).  Soon after the second adversary proceeding, the property was sold for approximately $851,000, with half of the proceedings retained by Mrs. Bryan as a tenant in common.  Aplt. App. 32.  This, the third adversary proceeding, seeks a declaration concerning the validity, priority, and extent of liens on the property vis-a-vis Mr. Clark.  Aplt. App. 6-7.

Following a two-day trial, the bankruptcy court determined that Aurora held a first-priority lien, Specialized held a second-priority lien, and Mr. Clark held no lien at all because he took no action to uncover any fraudulent transfers of

---

[1]According to Mr. Clark, Specialized assigned its interest in the property to the Trustee upon settlement.  Aplt. Br. at 20 n.7.

- 4 -

the property to the Trust.  <u>In re Bryan</u>, 469 B.R. at 353.  Relying primarily upon

<u>Shepler v. Whalen</u>, 119 P.3d 1084 (Colo. 2005) (en banc), the bankruptcy court

held that Mr. Clark would have been required to record a lis pendens and

commence a fraudulent conveyance lawsuit for his judgement lien to attach

because record title to the property was in the name of the Trust, not Mr. Bryan.

<u>In re Bryan</u>, 469 B.R. at 352.  The district court affirmed.  <u>In re Bryan</u>, 483 B.R.

at 742.  Mr. Clark timely appeals.


Discussion

On appeal, Mr. Clark argues that the district and bankruptcy courts erred in

(1) determining that he never established a judgment lien on the property, (2)

determining priorities, (3) not declaring that equitable subordination required

Aurora's lien be subordinated to Mr. Clark's, and (4) not declaring that

marshaling applied regarding the property proceeds.  Aplt. Br. 6-7.  We review a

bankruptcy court's legal determinations de novo and its factual findings under the

clearly erroneous standard.  <u>Connolly v. Harris Trust Co. of Cal. (In re Miniscribe</u>

<u>Corp.)</u>, 309 F.3d 1234, 1240 (10th Cir. 2002).

A.      Judgment Lien

We first address whether Mr. Clark's judgment lien attached to Mr. Bryan's

interest in the property.  Under Colorado law, a creditor who obtains a judgment

may enforce it against the real property of the debtor.  Section 13-52-102(1)

provides: "All . . . real estate of every person against whom any judgment is obtained in any court of record in this state . . . are liable to be sold on execution to be issued upon such judgment." Colo. Rev. Stat. § 13-52-102(1). The statute further provides the following procedure and consequences:

> A transcript of the judgment record of such judgment, certified by the clerk of such court, may be recorded in any county; and <u>from the time of recording such transcript, and not before, the judgment shall become a lien upon all the real estate</u>, not exempt from execution in the county where such transcript of judgment is recorded, <u>owned by such judgment debtor or</u> which such judgment debtor <u>may afterwards acquire</u> in such county, until such lien expires.

<u>Id.</u> (emphases added).

Mr. Clark obtained a judgment against Mr. Bryan on June 1, 2004, in state district court and then recorded it as a transcript of judgment[2] against Mr. Bryan on July 15, 2004, in Jefferson County, where the property is located. Aplt. App. 33. Based on the plain language of § 13-52-102(1), by recording the transcript of judgment, Mr. Clark perfected a valid judgment lien against Mr. Bryan that attached to any property interest Mr. Bryan then owned or afterward acquired. <u>See</u> <u>Shepler</u>, 119 P.3d at 1087; <u>Franklin Bank, N.A. v. Bowling</u>, 74 P.3d 308, 312 (Colo. 2003); <u>see also</u> <u>Colo. Prac., Methods of Practice</u> § 40:3.

Although the district court held that <u>Shepler</u> precluded Mr. Clark from ever establishing a valid lien interest in the property, that holding is too broad. Mr.

---

[2] By statute, a creditor is required to file a "transcript of judgment" and not a certified copy of the judgment itself. <u>See</u> Colo. Rev. Stat. § 13-52-102; <u>accord</u> <u>Colo. Prac., Methods of Practice</u> § 40:3 (6th ed.).

Clark argues that his judgment lien attached to any unrecorded equitable interest Mr. Bryan had while the property was in the name of the trust, and certainly by May 19, 2005, when the quitclaim deed was recorded. We reject the former and agree with the latter.

As we discuss below, Mr. Clark did not yet have a perfected judgment lien when the property was transferred into trust and prior to the July 15, 2004 recording of the transcript of judgment. We reject Mr. Clark's reliance upon Colo. Rev. Stat. § 38-10-111[3] to claim that title always remained in Mr. Bryan because the trust was later determined to be a sham.

As Mr. Clark argues, upon the property being quitclaimed to Mr. and Mrs. Bryan and subsequently recorded on May 19, 2005, Mr. Clark's valid judgment lien attached to Mr. Bryan's interest in the property. Aplt. Br. 19, 28. However, the appendices do not reflect the date of Specialized's recording. Given our decision that Mr. Clark's judgment lien attached to Mr. Bryan's interest in the property no later than May 19, 2005, we remand to the bankruptcy court to determine priority between Mr. Clark and Specialized.

We next address whether Mr. Clark's judgment lien takes priority over

---

[3] That section provides: "All deeds of gift, all conveyances, and all transfers or assignments, verbal or written, of goods, chattels, or things in action, or real property, made in trust for the use of the person making the same shall be void as against the creditors existing of such person." Colo. Rev. Stat. § 38-10-111.

Aurora based upon Mr. Bryan's equitable interest in the property as a trust beneficiary.  See Vento v. Colo. Nat'l Bank-Pueblo, 907 P.2d 642, 648 (Colo. App. 1995).

B.      Priority Based Upon Equitable Remedies

Mr. Clark presents four equity-based arguments as to why his judgment lien is superior to Aurora, none of which we find meritorious.

1.      Collecting Against an Equitable Interest

First, Mr. Clark argues that his judgment lien attached to Mr. Bryan's equitable interest in the property upon his filing of a transcript of judgment in 2004, giving Mr. Clark priority over Aurora's deed of trust, which was recorded in 2005.  The bankruptcy court implicitly rejected this argument when it determined that to obtain any lien, Mr. Clark would have been required to record a lis pendens and commence a fraudulent conveyance action.  We only agree that Mr. Clark was required to actively pursue an equitable remedy, assuming Mr. Bryan had an equitable interest in the property based upon his status as a trust beneficiary.

Nothing in our review of applicable case law supports Mr. Clark's contention that an unrecorded equitable claim automatically supercedes other lienholders based solely upon the recording of a judgment lien.  To the contrary, Mr. Clark needed to pursue an equitable remedy in order to collect against Mr. Bryan's equitable interest, if any, once attempts to find property in Mr. Bryan's

name proved futile. See, e.g., <u>Leyden v. Citicorp Indus. Bank</u>, 782 P.2d 6, 9-10 (Colo. 1989); <u>see also</u> <u>Emarine v. Haley</u>, 892 P.2d 343, 347 (Colo. App. 1994); <u>accord</u> 21 Am. Jur. 2d Creditors' Bills § 16. Even though the Trust was ultimately determined to be a sham, an equitable action pursued by a third party—here, the Trustee—does not serve to elevate Mr. Clark's equitable claim above other lienholders. Thus, the district and bankruptcy courts were correct in that <u>Shepler</u>, 119 P.3d at 1087-90, and <u>Security Services, Ltd. v. Equity Mgmt., Inc.</u>, 851 P.2d 921, 921-22, 924 (Colo. App. 1993), recognize that a creditor must take some action to reach what might be considered a debtor's equitable interest in real property. However, the courts erred by reading <u>Shepler</u> and <u>Security Services</u> as requiring Mr. Clark take action in order for his judgment lien to attach against the property that was in Mr. Bryan's name.

Mr. Clark makes much of the fact that taking first priority based on an equitable claim has little impact because Aurora should have known about his lien based on a title search of Mr. Bryan's name. We disagree. Requiring parties to search for liens outside the chain of title would defeat the purpose of Colorado's race-notice statute, § 38-35-109, and its recording statutes, including §13-52-102, which "quite clearly . . . provide notice to prospective purchasers of encumbrances on title, and to protect certainty and marketability of title to real property, such that only recorded instruments will be honored." <u>Franklin Bank</u>, 74 P.3d at 312.

2.     Section 38-10-111

Relying primarily on Alberico v. Health Mgmt. Sys., Inc., 5 P.3d 967 (Colo. App. 2000), Mr. Clark makes a second argument: that § 38-10-111 requires any fraudulent transfer be voided ab initio as to an existing creditor, thus the 2000 and 2003 transfers should be voided as to him, which also allows his lien to take priority over Aurora's. See § 38-10-111.

The bankruptcy court rejected Mr. Clark's argument, concluding that (1) "shall be void" in § 38-10-110 means "voidable," based primarily on the interpretation of similar language in Colo. Rev. Stat. § 38-10-117; thus, Mr. Clark was required to pursue a fraudulent transfer action against Mr. Bryan for the transfers to be voided, and (2) contrary to the statute's plain language, Mr. Clark was not an existing creditor at the time of the fraudulent transfers. Aplt. App. 21, 23-25; In re Bryan, 469 B.R. at 350-52. We agree with the first conclusion only.

We disagree with the second conclusion that Mr. Clark, who filed a lawsuit against Mr. Bryan in 2002, was not a "creditor[] existing" when the Bryans transferred the property to the Trust in 2003. Under Colorado law, "'[c]reditor,' as used in [Section] 38-10-117, includes persons with unlitigated claims against a defendant." Sands v. New Age Family P'ship, 897 P.2d 917, 921 (Colo. App. 1995) (emphasis added). Although Mr. Clark's claim arises under the self-settled trust statute—Section 38-10-111—and not the fraudulent conveyance statute, we find no principled reason to construe the meaning of the word "creditor" any

- 10 -

differently in the two provisions.  Nor does the term "existing" in Section 38-10-111 require a different result.  A creditor with an outstanding claim against a debtor need not reduce his or her claim to judgment before the conveyance to be considered "existing."  See Fulton Inv. Co. v Smith, 149 P. 444, 445 (Colo. App. 1915) (tort-creditor seeking to invalidate conveyance under § 38-10-111's precursor statute not an "existing" creditor because transfer predated both the tort and the rendition of judgment in her favor for that tort).  A contrary interpretation would allow debtors to insulate their property from creditors who are currently prosecuting a lawsuit (but have yet to win a judgment) by conveying property to a self-settled trust.[4]

For similar reasons, however, we disagree with Mr. Clark's argument that "shall be void" in Section 38-10-111 means "void ab initio" and not—as the district court held—"voidable."  Mr. Clark's proposed interpretation runs counter to Colorado case law, the state's Statute of Frauds, and its race-notice scheme.  Colorado courts have already interpreted the exact same language in the neighboring fraudulent conveyance statute to mean "voidable."  See, e.g.,

---

[4] Nor does Greco v. Pullara, 444 P.2d 383 (Colo. 1968), dictate otherwise. Greco determined only that a general creditor does not have constructive notice of a fraudulent transfer until reducing his or her claim to judgment.  See id. at 384. The Greco court did not hold that to void a fraudulent conveyance, the plaintiff-creditor must have been a judgment creditor at the time of the conveyance.  On the contrary, the judgment creditor in Greco had not reduced her claim to judgment when the fraudulent transfer at issue occurred, see id. at 383-84, and yet the court upheld the decision below voiding the transfer, see id. at 386.

- 11 -

<u>Shepler</u>, 119 P.3d at 1088 ("[A]lthough section 38-10-117 provides that conveyances made with the intent to hinder, delay, or defraud creditors 'shall be void,' the statute has been interpreted to mean that the conveyance is *voidable* rather than void." (citation omitted)).

This interpretation makes sense in light of Colorado's Statute of Frauds. Indeed, interpreting § 38-10-111 to make transfers void ab initio would conflict with the state's bona fide purchaser statute (§ 38-10-121), which provides that the provisions in the Statute of Frauds "shall not be construed in any manner to affect or impair the title of a purchaser for valuable consideration, unless it appears that such purchaser had previous notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title of such grantor." Colo. Rev. Stat. § 38-10-121; <u>see also</u> <u>Jefferson Cnty. Bd. of Equalization v. Gerganoff</u>, 241 P.3d 932, 935 (Colo. 2010) (en banc) ("In determining the meaning of a statute, our central task is to ascertain and give effect to the intent of the General Assembly. The language at issue must be read in the context of the statute as a whole and the context of the entire statutory scheme." (citations omitted)).

Mr. Clark correctly notes that the court in <u>Alberico</u> suggested that a transfer to a self-settled trust would be void ab initio. <u>See</u> <u>Alberico</u>, 5 P.3d at 970 (citing <u>Concord v. Huff</u>, 355 P.2d 73, 75-76 (Colo. 1960) (a void deed conveys no title)). But unlike in this case, no intervening bona fide purchaser had taken title to the property at issue in <u>Alberico</u>. The <u>Alberico</u> court was therefore not in a

position to consider fully the impact of its decision on Colorado's race-notice regime.[5]

That impact would be substantial if we were to agree with Mr. Clark. His proffered interpretation of § 38-10-111 would frustrate a central purpose of the state's race-notice statute, which "is to protect 'purchasers of real property against the risk of prior secret conveyances by the seller [and] to permit a purchaser to rely on the condition of title as it appears of record.'" Nile Valley Fed. Sav. & Loan Ass'n v. Sec. Title Guar. Corp. of Baltimore, 813 P.2d 849, 851 (Colo. App. 1991) (quoting Grynberg v. City of Northglenn, 739 P.2d 230, 238 (Colo. 1987) (en banc)).

Accordingly, because interpreting "shall be void" as "void ab initio" would create inconsistency in Colorado's Statute of Frauds and effectively eviscerate the state's race-notice scheme in the context of self-settled trusts, we follow the Colorado Supreme Court's decision in Shepler and hold that "shall be void" means the same thing in § 38-10-111 as it does in § 38-10-117: "voidable."

3.    Equitable Subordination and Marshaling

Mr. Clark makes two additional arguments as to his lien taking first priority. First, relying on Joondeph v. Hicks, 235 P.3d 303, 306 (Colo. 2010), Mr. Clark argues that Aurora's lien should be equitably subordinated to his

_____

[5] Moreover, unlike Mr. Clark, the creditor in Alberico had filed liens against the property, which provided constructive notice to any would-be purchasers. See 5 P.3d at 968-69.

because Mr. Bryan was integral to the financing of the 2005 loan; thus, Aurora should have known about his judgment lien when conducting a title search. Second, he argues that because Aurora can satisfy its debt out of Mrs. Bryan's share of the property, his lien should take priority based on the doctrine of marshaling.   Mrs. Bryan argues that Mr. Clark failed to properly plead either claim and that both she and Aurora objected to the claims' inclusion both before and during trial.[6]  Aplee. Bryan Br. 9, 12.  Neither issue was addressed by the bankruptcy or district courts in light of their conclusions that Mr. Clark did not have a legal interest in the property.  See In re Bryan, 469 B.R. at 359 n.49; In re Bryan, 483 B.R. at 742 n.4.

Because we conclude that Mr. Clark's judgment lien attached to the property upon Mr. Bryan's recording of the property in his name on May 19, 2005, we remand for the bankruptcy court to consider these arguments.

AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge

---

[6]   The bankruptcy court struck Mrs. Bryan's objections to the pre-trial statement (which included these claims) due to her lack of cooperation in preparing the document, although it appears that Aurora had similar objections. On remand, the bankruptcy court may explain its rationale.